Brewer, Circuit Justice,
(after stating the facts.) This case must be determined exclusively by the provisions of the interstate commerce law, as it was originally passed and before any amendment. No question was submitted to the jury, and no evidence was offered, as to whether 18 cents was or was not in fact a reasonable rate for carrying corn from Scranton to Chicago. The theory of the plaintiff’s case was that the defendant company had violated the fourth section of the act, by charging more for a short than for a long haul; and, of course, if it had, it is liable to the plaintiff.
*914 We do not care to enter into any extended discussion of the interstate commerce act. It was the first effort of the general government to regulate the great transportation business of the country. That business, though of a quasi public nature, and therefore subject to governmental regulation, has, as a matter of fact, been carried on by private capital through corporations. The fact that it was a quasi public business always prevented the owners of capital invested in it from charging, like ■owners of other property, any price they saw fit for its use. A reasonable compensation was all that they could exact, and he who felt aggrieved by a charge could always invoke the aid of the courts to protect himself against it. With him, however, lay the burden of proving the fact that the charge was unreasonable; a burden which all experience show's was onerous, and therefore seldom undertaken; the party aggrieved preferring to submit to the overcharge, rather than go to the expense and time of contesting it. Hence the efforts by state and nation to establish limits of charges, and means of evidence of easy and accurate ascertainment. While it is the duty of the courts to see that the provisions established by congress are not frittered away on technical or trilling grounds, yet it is also equally their duty to see that such a legislation is not carried beyond its eleár scope, and that the owners of private capital invested in the business of transportation be not deprived of their liberty •of contract and right of control any further than the lawmaking power has intended that they should be.
With these preliminary observations, we remark:
First. That congress has not attempted to require that the tariffs on all roads be uniform; nor has it attempted to place a limit in figures beyond which no company may go in its charges. The laws of business and of competition have, as yet, been deemed sufficient restraints in that direction. The Rock Island is, between Chicago and the Missouri river, a. parallel and competing road with the defendant company; yet there is nothing in the commerce act which compels either company to charge for through or local transportation the same as its competitor. Either company may reduce its rates as far as it pleases below what is reasonable and a fair compensation for the service without violating the act; and such reduction compels no change by .its competitor or any other ■company. This is obvious from a mere reading of the act.
Secondly. That, where two companies owning connecting lines of road unite in a joint through tariff, they form for the connected roads practically a new and independent line. Neither company is bound to adjust its own local tariff to suit the other, nor compellable to make a joint tariff with it. It may insist upon charging its local rates for all transportation over its line. If, therefore, the two companies by agreement make a joint tariff over their lines, or any parts of their lines, ■such joint tariff is not the basis by which the reasonableness of the local tariff of either line is determined. To illustrate: On the defendant’s road, the distance from Turner to Chicago is 30 miles; on the Lake Shore line, from Chicago to Cleveland it is two or three hundred miles. The defendant company may charge 15 cents for transporting grain the 30 *915 miles from Turner to Chicago, providing that be in fact only a reasonable charge for the service, although the Lake Shore Company charges no more for transporting it from Chicago to Cleveland; and the fact that the rate on each line is 15 cents for the distance named will not prevent the two companies from making a joint tariff for grain shipped from Turner to Cleveland of 12 cents; less than the local tariff of either. That we may not be misunderstood, we do not mean to intimate that the two companies, with a joint line, can make a tariff from Turner to ■Cleveland higher than from Turner to Buffalo, or any other intermediate point between Cleveland and Buffalo; for when the two companies, by their joint tariff, make a new and independent line, that new and independent line may become subject to the long and short haul clause. But what we mean to decide is that a through tariff on a joint line is not the standard by which the separate tariff of either company is to be. measured or condemned.
This proposition may not be as obvious as the former, and yet a careful study of the act leaves no doubt of its correctness. In the first section a definition is given of the term “railroad,” which, in addition to bridges and ferries, includes “also all the road in use by any corporation •operating a railroad, whether owned or operated under a contract, agreement, or lease.” A joint tariff does not bind road to .road in the sense that the two are used or operated by either corporation. There is neither unity of ownership nor unity of operation, but only a singleness •of charge, and a continuity of transportation over connecting roads. Neither is there any mandate to connecting companies to surrender any control over their .own roads, or to unite in a joint tariff. “Reasonable, proper, and equal facilities for the interchange of traffic” are commanded by the third section; but with the proviso: “This shall not be construed ■as requiring any such common carrier to give the use of its track or terminal facilities to another carrier engaged in like business.” No power «existed at common law, and none is given by the act to court or commission, to compel connecting companies to contract with each other, to abandon full control of their separate roads, or to unite in a joint tariff. Express Cases, 117 U S. 1, 6 Sup. Ct. Rep. 542, 628; Kentucky & I. Bridge Co. v. Louisville & N. R. Co., 87 Fed. Rep. 567; Little Rock & M. R. Co. v. St. Louis, I. M. & S. Ry. Co., 41 Fed. Rep. 559. The whole matter is left to the voluntary action of the companies; and, in forming by agreement any joint tariff, the basis of division and the proportion of moneys each shall take is also a matter left to their détermination.
The denunciation of the fourth section is against each separate common carrier, for its violation-of the “long and short haul” clause on its •own line. The language is:
“That it shall he unlawful for any common carrier, subject to the provisions of this act, to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kind of property, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction; the shorter being included within the longer distance. ”
*916 The use of the word “line” is significant. Two carriers may use the same road, but each has its separate line. The defendant may lease trackage rights to any other railroad company, but the joint use of the same track does not create the “same line,” so as to compel either company to graduate its tariff by that of the other.
Further, by section 6, every common carrier is required to print and publish at every depot along its own road schedules showing its rates and fares and charges. There is a prohibition against advancing rates without giving notice, and, in case of a reduction, notice thereof must be immediately posted; whereas, in reference to joint tariffs, the requisition is simply that each common carrier furnish to the commission a copy of all contracts therefor, as well as copies of the joint tariffs; and power is given to the commission to determine the amount of publication that shall be required.
Again, at the time of the passage of this act joint through tariffs were well known, as well as the fact that they wére generally less than the sum of the local tariffs, and not distributed between the several companies making them according to the mere matter of mileage. In this act joint tariffs are recognized; and, if congress had intended to make the local tariff subordinate to or measured by the joint tariff,.its language would have been clear and specific.
It is worthy of note that in the debates which attended the passage . of this bill through the two houses, and while this matter was under discussion, it was again and again said by those participating in the debates that the line formed under the joint tariff of connecting companies was one separate and independent from that of either of the connecting companies; and also worthy of note that in the actual administration of affairs by the interstate commerce commission the same thing has been constantly recognized.
Applying these propositions to the case at bar, a conclusion is easily reached. There is no pretense that any shipper at Scranton, or other point on the defendant’s line further from Chicago than that, was charged less for shipping grain to Chicago than the plaintiff. In other words, there was no violation of the “long and short haul” clause by the defendant, in respect .to its own line; nor did the defendant, acting with eastern companies, on the line made by its road in connection with theirs, charge or receive for grain shipped from Scranton or any point west, to any eastern point, less than the through tariff. In other words, the defendant did not, separately or in connection with other companies, violate section 4. It avails the plaintiff nothing that he was unaware of this through joint tariff at the time he made the shipments which are the basis of his cause of action. No false statement was made to him. He made no inquiry in respect to its existence. The matter of publication was by the act, as it then stood, left to be determined by the commission. The provision of the statute, section 6, is as follows:
“Such joint rates, fares, and charges on such continuous lines so filed as aforesaid shall be made public by such common carriers when directed by said commission, in so far as may, in the judgment of the commission, be deemed prac *917 ticable; and said commission shall, from time to time, prescribe the measure of publicity which shall be given to such rates, fares, and charges, or to such part of them as it may deem it practicable for such common carriers to publish, and the places in which they shall be published. ’*
And the order of the commission made June 21, 1887, provided that—
“Such joint tariffs shall be so published by plainly printing the same in large type of at least the size of ordinary ‘pica,’ copies of which shall be kept for the use of the public in such places and in such form that they can be conveniently inspected, at every depot or station upon the line of the carriers uniting in such joint tariff, where any business is transacted in competition with the business of a carrier whose schedules are required by law to be made public as aforesaid. ”
Scranton was no competing point. No other line, so far as appears, touched the place; and hence no publication of the joint tariff was there required. Of course the defendant was under no common-law or statute obligation to advise the plaintiff where or how he had better ship his grain. It fulfilled its legal obligation when it published its local tariff, and advised him truthfully in respect to any rates in respect to which he made special inquiry.
For the reasons above stated, on the facts as they appeared in evidence, the jury should have been instructed to find a verdict for the defendant. The judgment of the court below will be reversed, and the case remanded for further proceedings in accordance with this opinion.
Case No. 68. Chicago & Northwestern Railway Company, Plaintiff in Error, v. H. A. Junod and R. Y. Culbertson, Defendants in Error, involves the same questions, and the same judgment of reversal will be entered.