## PARSONS v. CHICAGO & N. W. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. September 24, 1894.)

No. 407.

1. INTERSTATE COMMERCE ACT—REASONABLE RATE—UNDUE PREFERENCE.

Two connecting carriers united in putting in force a joint through tariff between given points. *Held*, under sections 3 and 4 of the interstate commerce act, that such joint tariff was not the standard by which the reasonableness of the local tariff on either line was to be determined, and that the fact that a railroad company charged a local shipper more for transporting property between two points on its road than it charged for the same services when the property transported was received from a connecting railroad, and was carried under a joint tariff established by the connecting carriers, did not establish the charge of an undue preference or discrimination. Railway Co. v. Osborne, 3 C. C. A. 347, 52 Fed. 912, 10 U. S. App. 430, and Tozer v. U. S., 52 Fed. 917, followed.

2. SAME—SUFFICIENCY OF COMPLAINT.

The C. & N. W. Ry. Co. operated a line of railroad from Chicago to a point in Iowa at which it connected with two roads controlled by it, extending to points in Nebraska. Said company issued a freight tariff headed "Joint Tariff on Corn and Oats in Car Loads to R., Illinois, When Destined to New York, Boston, &c.," giving certain rates from points in Nebraska, and referring, for rates from R. to New York, etc., to a previous tariff. P. sued the railway company for damages, alleging that while this tariff was in force he was required to pay a higher rate for shipments over defendant's road from points in Iowa to Chicago than the rate given from Nebraska points to R., though for a shorter distance; that the fixing of R. as a terminus was a device to evade the law, R. not being a grain market, and the grain being in fact transported to Chicago; that a brother of defendant's freight agent was interested in the grain business in Nebraska; that the tariff for Nebraska points was not made known in Iowa, and the tariff sheet was not filed with the interstate commerce commission; and that the charge to plaintiff was unlawful because an undue preference was given to Nebraska shippers, and a larger charge made for a shorter than a longer haul; also, that defendant, in combination with other companies, had made a through rate from Nebraska points to eastern ports, less than plaintiff, paying local rates to Chicago, and thence to the East, was obliged to pay, no through rates from Iowa points being made; and that an unlawful discrimination was thereby made against Iowa shippers, and the long and short haul clause violated. *Held*, on demurrer, that no cause of action was stated, since the freight tariff pleaded showed that it was part of a joint through rate, and such a rate is not the standard of reasonableness of a local rate, while the other allegations were either immaterial, or insufficient to establish the unreasonableness of the rates or a violation of law.

In Error to the Circuit Court of the United States for the Southern District of Iowa.

This was an action for damages founded on the provisions of the act of congress of February 4, 1887, commonly called the "Interstate Commerce Act" (24 Stat. 379). Plaintiff in error, E. M. Parsons, was the plaintiff in the trial court. There were five counts in the declaration. The first of these counts contained, in substance, the following allegations: That the defendant corporation, the Chicago & Northwestern Railway Company, is a common carrier of freight and passengers, and operates a line of railroad extending from the city of Chicago, Ill., to Missouri Valley and Council Bluffs, in the state of Iowa; that it also owned the majority of the stock, and, by the same general officers and board of directors, controlled and operated two other railroads, to wit, the Fremont, Elkhorn & Missouri Valley Railroad and the Sioux City & Pacific Railroad, which latter roads connected with the Chicago

& Northwestern Railway at Missouri Valley, and extended westwardly from that point to points in the state of Nebraska; that in February, 1888, the plaintiff was a shipper of corn, residing in the state of Iowa, and had accumulated a large amount of corn, for shipment to Chicago and eastern cities, at various stations in Iowa along the line of the defendant company's railroad, particularly at a place called Carroll in said state, which was 395 miles west of Chicago; that previous to December 30, 1887, the freight rate on corn and oats shipped from Nebraska points over the aforesaid railroads to Rochelle, Ill., and to Chicago, Ill., had been higher than on shipments from Iowa points to the same places, because the distance was greater, and the cost of carriage greater; that on December 30, 1887, the defendant company, acting in concert with one K. C. Morehouse, who was the general freight agent of the Sioux City & Pacific Railroad and of the Fremont, Elkhorn & Missouri Valley Railroad, put in force from points in the state of Nebraska a certain freight tariff upon corn and oats, in the words and figures following, to wit:

"Chicago and Northwestern Railway, Fremont, Elkhorn & Missouri Valley and Sioux City and Pacific Railway. Joint Tariff on Corn and Oats, in Car Loads. Taking effect December 30, 1887, to Rochelle, Ill., when destined to New York, Boston, Philadelphia, Baltimore:"

|  | Per 100 lbs. |
|---|---|
| Blair, Neb | 11 |
| Kennard, Neb | 11 |

*    *    *    *    *    *    *    *    *    *    *

[Here follow rates from many other Nebraska points to Rochelle, Ill.]

"Prepaid. Waybill through to Rochelle, Ill., via Missouri Valley, at rates given above. For rates from Rochelle to Baltimore, Philadelphia, New York, and Boston, see C. & N. W. G. F. D. No. 2604, November 25, 1887, amendments or subsequent issues.

"K. C. Morehouse,　　　　　　　　　　　　H. R. McCullough,
"G. F. A., S. C. & P. and　　　　　　　　　G. F. A., C. & N. W. R.
"F., E. & M. V. Rs."

The declaration further averred that said freight tariff was never printed in type, or published at any of the defendant's railroad stations in Iowa; that no copy thereof was filed with the interstate commerce commission, and that knowledge thereof was concealed from the plaintiff and other Iowa shippers; that said tariff remained in force until February 1, 1888, and that in the meantime large quantities of corn and oats were shipped thereunder from Blair and Kennard, Neb., to Rochelle, Ill., and thence to Chicago, at the rate specified therein, to wit, 11 cents per 100 pounds; that during the same period the plaintiff had a large amount of corn at Carroll, Iowa, for shipment to Chicago, which he was compelled to ship over the defendant's railroad, and did so ship it to Chicago, paying therefor freight charges at the rate of 19 cents per hundredweight for carrying the same 395 miles, the distance from Carroll to Chicago, which was somewhat less than the distance from Blair and Kennard, Neb., to Rochelle, Ill. The plaintiff further averred that the fixing of the point Rochelle as the terminus of the route under the aforesaid special tariff issued December 30, 1887, was a mere device to evade the law, as Rochelle was not a grain market, and had no elevators, and that said grain was intended to be, and was in fact, transported by the defendant to Chicago, Ill., and was there sold on the market, or delivered to connecting roads for eastern seaboard points; that the charge of 19 cents per 100 pounds, which the plaintiff was compelled to pay for transporting corn from Carroll, Iowa, to Chicago, was an unlawful charge, under the interstate commerce act, such as entitled plaintiff to recover damages, because an unlawful preference was thereby given to Nebraska shippers over Iowa shippers, and also because a greater compensation was demanded for a shorter than a longer haul, the shorter haul being included in the longer. The first count of plaintiff's declaration also contained an allegation that K. C. Morehouse, who was the general freight agent of the two roads extending into Nebraska, had a brother, who, in January and February, 1888, was a copartner with persons who owned large quantities of corn at points in Nebraska on the line of the Fremont, Elkhorn & Missouri Valley Railroad. The second, third, and fourth counts of the plaintiff's declaration were the same, in substance, as the first

count, except that the plaintiff therein claimed damages on account of shipments of corn from other Iowa points to Chicago, which he had made between the 30th of December, 1887, and February 1, 1888. The fifth count of the declaration charged, in substance, that the Chicago & Northwestern Railway Company, combining with said K. C. Morehouse and other railroad companies operating roads east of Chicago to give a preference to grain shippers in Nebraska, and to discriminate against grain shippers in Iowa, did put in force on February 17, 1888, at all stations on the Fremont, Elkhorn & Missouri Valley Railroad in Nebraska, between Blair and Skull Creek, a freight tariff on corn and oats destined to New York and other seaboard points, whereby it did between February 17 and March, 1888, transport corn and oats from said Nebraska stations to New York for 36½ cents per hundredweight, and to Philadelphia for 34½ cents, and to Baltimore for 33½ cents; that all of said Nebraska points were further from New York, Philadelphia, and Baltimore than the stations on the defendant's road in Iowa; that the through rate so established for said Nebraska points was not established for Iowa points on the line of the defendant's road, or made known to Iowa shippers; that the tariff sheet in question was not filed with the interstate commerce commission, or printed or published as required by law; that during the period in question, from February 17 to March, 1888, the plaintiff was compelled to pay on corn by him shipped from Carroll, Iowa, to New York, via Chicago, a local rate to Chicago of 19 cents per hundredweight and from there to New York of 27½ cents, making a total of 46½ cents per hundredweight, as against a rate of 36½ cents per 100 allowed to shippers residing at the aforesaid points in Nebraska. The plaintiff averred, in substance, that the establishment of this latter rate was an unlawful discrimination against Iowa shippers, as well as a violation of the long and short haul clause of the interstate commerce act, by virtue of which he had sustained damages in the sum of about $1,000. The defendant company demurred to the declaration, as a whole, on the ground that the several counts of the declaration each showed that the rate complained of therein from Nebraska points to the seaboard was a joint rate established by two or more connecting railroads, while the rate exacted of the plaintiff was a local rate for shipments wholly upon the defendant company's own line, and that the rate so exacted from the plaintiff, it being a purely local rate, was not rendered unlawful by the establishment or existence of the joint through rate. The trial court sustained the demurrer, and the plaintiff declined to plead further, whereupon final judgment was entered in favor of the defendant. To reverse that judgment the plaintiff sued out a writ of error.

C. C. Nourse (C. L. Nourse, on the brief), for plaintiff in error.

Lloyd W. Bowers (N. M. Hubbard, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

This court held in the case of Railway Co. v. Osborne, 10 U. S. App. 430, 3 C. C. A. 347, and 52 Fed. 912, which suit grew out of the establishment by the defendant company of the same freight rate that gave rise to the present action, that, where two connecting carriers unite in putting in force a joint through tariff between given points, such joint tariff is not the standard by which the reasonableness of the local tariff on either line is to be determined. It was decided that, where two connecting carriers unite in a joint tariff, they form practically a new and independent line, and that the joint rate established over such line may be made less than the sum of the local rates, or even less than the local rate of either company over that part of its road constituting a part of the joint

line, without violating the long and short haul clause found in the fourth section of the interstate commerce law. The court was careful to limit the foregoing proposition by the proviso that, under the first section of the interstate commerce act, all rates, whether local or joint, must be "reasonable and just." But it distinctly overruled the contention that a local rate between two points on the same road is necessarily unlawful because it is higher · than the rate charged under a joint tariff for a much longer haul over a line which is composed in part of that portion of the road to which the local rate applies. In the case of Tozer v. U. S., 52 Fed. 917, it was also decided, that the fact that a railroad company charges a local shipper more for transporting property between two points on its road than it charges for the same services when the property transported is received from a connecting railroad, and is carried under a joint tariff established by the connecting carriers, is insufficient evidence to establish the charge of an undue preference or discrimination under the third section of the interstate commerce act. The court remarked, in substance, that it did not follow, and that a jury was not warranted in finding, that an undue preference or advantage had been given, because the local rate was in excess of the carrier's share of the joint rate. While this latter ruling in Tozer v. U. S. was made by the circuit court, it is to be noted in passing that the case was brought to the circuit court on writ of error from the United States district court, and that the case was heard and determined in the circuit court by Mr. Justice Brewer and Judge Caldwell, both of whom had taken part in the decision of the case of Railway Co. v. Osborne, above cited. Moreover, both cases were under advisement, and the opinions therein were promulgated at about the same time. Accepting the views thus expressed as sound, and without undertaking to reconsider questions which have already been decided by this court after full consideration, we turn to consider the various points argued by counsel, bearing on the general question involved in the present suit, whether the petition filed therein stated a cause of action.

The first, and perhaps the most important, contention of the plaintiff in error, seems to be that the petition does not allege or otherwise show, as was assumed by the demurrer, that on December 30, 1887, the defendant company, acting in concert with other connecting railroad companies, had put in force a joint through tariff between certain Nebraska points and the city of New York and other eastern cities, and that it does not show that the rate of 11 cents per 100 from Blair and Kennard, Neb., to Rochelle, Ill., was a part of such joint through rate to the seaboard. It is said that the petition shows affirmatively that the tariff established on December 30, 1887, was a tariff to Rochelle, Ill., only, and that the only parties to it were the Chicago & Northwestern Railway Company, the Fremont, Elkhorn & Missouri Valley Railroad Company, and the Sioux City & Pacific Railroad Company. With reference to this contention, it is to be observed that the tariff sheet of December 30, 1887, set forth in the petition in the case at bar, was

before this court in the case of Railway Co. v. Osborne, supra, and that it was there found and determined that by an agreement between the defendant company, the Fremont, Elkhorn & Missouri Valley Railroad, the Sioux City & Pacific Railroad, and certain eastern companies, a joint through rate from certain Nebraska points to the seaboard was in fact established and put in force. It is true that in the case last cited we had before us other evidence than the tariff sheet of December 30, 1887, which may have aided somewhat in reaching the conclusion last stated; but we think that the tariff sheet itself, which is set out in the petition, sufficiently shows that an arrangement or agreement existed between the several companies last named, whereby corn and oats were to be carried through from the Nebraska points named in the tariff sheet, to the eastern cities therein named, at a certain specified rate, and that the rate of 11 cents per hundredweight from Blair and Kennard, Neb., to Rochelle, Ill., was a part of such joint through rate and not a local rate. The caption of the tariff sheet shows that the rate of 11 cents per 100 only applied when the grain was destined through to New York, Boston, Philadelphia, and Baltimore; and the memorandum at the foot of the sheet shows that the total through rate was to be ascertained by the company's agents by consulting the tariff sheet of November 25, 1887, and subsequent issues, for the rate from Rochelle to the eastern cities specified in the schedule. The inference is clear and irresistible that a specific joint through rate from the Nebraska points named in the tariff sheet to the seaboard had been established by the several companies above mentioned on December 30, 1887; that shippers of corn and oats from said points to the seaboard points named had the right to avail themselves of the joint through rate; and that the 11-cent rate from Blair and Kennard to Rochelle was only applicable to such through shipments. Nor are we able to hold that the inference above stated, arising from the language of the tariff sheet, is sufficiently rebutted by the allegation of the petition, above recited, that "the fixing of said point, Rochelle, as the terminus of the route under the special tariff sheet of December 30, 1887, was a mere device to evade the law," etc. No facts are averred, showing that the agreement for a joint through rate, indicated by the tariff sheet in question, was merely colorable; that no such agreement was ever made or acted under; and that the station agents along the line of the roads in Nebraska had received private instructions to disregard the direction to only allow the rate specified in the tariff sheet on through shipments to the seaboard. Without some such allegations as these, showing that no agreement was made by the several carriers for a joint through rate, or that the directions contained in the tariff sheet were secretly recalled and were not observed, we can attach no importance to the charge that it was a mere device to evade the law. That allegation, standing by itself, and without the averment of facts to support it. is a mere conclusion of the pleader. Nor do the facts stated in that connection—that Rochelle was not a grain market; that the grain was not transshipped at Rochelle, but was carried

through over defendant's road to Chicago, and was there delivered to the connecting roads for eastern seaboard points—serve to support it; for conceding that it was so carried through to Chicago, and there delivered to the other connecting carriers, it may nevertheless have been carried on a joint through rate given to the Nebraska shippers, such as the tariff sheet indicates. In other words, the facts pleaded do not substantiate the charge that the pretended tariff agreement of December 30, 1887, "was a mere device to evade the law." We must accordingly conclude that the petition does show the establishment and existence of a joint through rate, such as is assumed by the demurrer, and that the 11-cent rate accorded to Nebraska shippers was not a local rate, such as was paid by the plaintiff in error, but was a portion of the joint through rate. If such was not the meaning of the pleader, the fault lies with him, in failing to make his complaint more definite.

Other allegations found in the petition, to which our attention has been particulary directed by counsel for the plaintiff in error, on the ground that they aid materially in the statement of a cause of action, are these: That the general freight agent of the Nebraska roads, whose signature is appended to the rate sheet of December 30, 1887, had a brother, who was a copartner of the owners of large quantities of grain in Nebraska, and that the rate sheet of December 30, 1887, was not filed with the interstate commerce commission, and was not published at Iowa stations on the defendant's road.

Of the first of these allegations little need be said. It is not averred that the special tariff was put in force merely to favor a brother of the general freight agent in question; neither does it follow, as a matter of law, that the rate sheet in question was purely fictitious and colorable, and that no joint through rate was in fact established, or, if it was established, that Iowa shippers were discriminated against, merely because K. C. Morehouse, the general freight agent of the Nebraska roads, had a brother who was interested in corn and oats in Nebraska. We can attach no importance to this allegation, because it is wholly immaterial and irrelevant.

Concerning the fact that the tariff sheet of December 30, 1887, was not published at the Iowa stations, it will suffice to refer to what was said on that subject by Mr. Justice Brewer in delivering the opinion of this court in Railway Co. v. Osborne, heretofore cited. The claim is not made, as we understand, that the defendant company cannot take advantage of the fact that the 11-cent rate from Blair and Kennard to Rochelle was in reality, and as shown by the petition, a part of a joint through rate, merely because the tariff sheet of December 30, 1887, was not filed with the interstate commerce commission. The purpose of the whole allegation touching the nonpublication and nonfiling of the rate sheet in question seems to have been to show that there was an actual intent on the part of the defendant company to discriminate against Iowa shippers; but it matters not what its intent may have been, if the act committed was not an illegal discrimination, though

intended as such. As the law stood when the transaction took place, the interstate commerce commissioners undoubtedly had the right to determine whether they would make public such agreements between railroad companies, and such joint tariff sheets, as were filed with them pursuant to the provisions of the sixth section of the act. Its language is:

"Such joint rates, fares and charges on such continuous lines so filed as aforesaid shall be made public by such common carriers when directed by said commission, in so far as may, in the judgment of the commission, be deemed practicable; and such commission shall from time to time prescribe the measure of publicity which shall be given to such rates, fares and charges, or to such part of them as it may deem practicable for such common carriers to publish."

We are unable to say, therefore, that a complaint otherwise clearly insufficient is made good by a single allegation of the non-filing of the rate sheet, which was evidently inserted for the purpose of developing the intent of the defendant company, and for no other purpose, so far as we are advised.

The only other proposition advanced in the argument which we deem it necessary to notice is this: It is said that as the complaint made in the case of Railway Co. v. Osborne was for a violation of the long and short haul clause of the statute, whereas the petition in the case at bar also counts upon a violation of the third section of the law, therefore the latter case is not ruled by the former. Of this contention it may be said that, while the present petition does charge an unlawful discrimination against persons and places, yet the only material fact averred to support the accusation is the fact that the defendant charged a local rate of 19 cents per 100 for hauling grain from Carroll to Chicago, while 11 cents per 100, being its proportion of a joint through rate to the seaboard, was the sum received by it for hauling grain a longer distance, from Blair and Kennard to Rochelle, which latter point was a station on its road intermediate between Carroll and Chicago. It is manifest that the alleged disparity between the local rate and the defendant's proportion of the joint through rate is not sufficient, as a matter of pleading, to establish the charge of an "undue or unreasonable preference or disadvantage," under the third section of the act, unless it follows, as a matter of law, that because of the alleged disparity in the two rates an undue or unreasonable preference was given to persons and places. Now, in the case last above cited it was ruled, as we have heretofore stated, that if "two companies make a joint tariff over their lines, or any parts of their lines, such joint tariff is not the basis by which the reasonableness of the local tariff of either line is determined." More pointedly it was said in Tozer v. U. S., where the sole question was one of undue preference and discrimination under section 3 of the act, that, "if the joint through tariff of the two connecting roads is not a standard by which the local tariff of either can be declared in violation of section 4, neither can it be the standard by which the question of undue preferences is determined under section 3," and that the principle announced in the case of

Railway Co. v. Osborne must control the decision of the case then in hand. In other words, it was held in both of the cases last cited that a question of undue discrimination must be determined by other considerations than the mere disparity that may exist between a local rate and a joint through rate, and that it never follows, as a matter of law, that an undue preference has been given to a person or locality, because a disparity is shown to exist between a local rate and a joint rate. We must accordingly overrule the last-mentioned contention of counsel, that the petition in the case at bar stated a cause of action, notwithstanding the previous rulings of this court in the case heretofore cited.

In conclusion, it is only necessary to add that we have reviewed all of the points to which our attention has been invited by counsel for plaintiff in error, with a view of showing that the petition stated a cause of action, with the result that we are not able to say that the circuit court erred in sustaining the demurrer. Its judgment is therefore affirmed.