CASE 9—INDICTMENT AGAINST THE CHESAPEAKE & OHIO RAILWAY COMPANY FOR A VIOLATION OF THE LONG AND SHORT HAUL STATUTE.—MARCH 5.

# Commonwealth v. Chesapeake & Ohio Ry. Co.

APPEAL FROM JOHNSON CIRCUIT COURT.

DEMURRER TO INDICTMENT SUSTAINED AND COMMONWEALTH APPEALS. AFFIRMED.

CARRIERS—LONG AND SHORT HAUL—JOINT TRAFFIC RATE.

Held:   1. A joint traffic arrangement, by which connecting carriers haul from a point on one road to a point on the other road for less than the first carrier charges from the same point on its road to its terminus, between the points, is not in violation of Kentucky Statutes, section 820, making it an offense for a carrier to charge more for hauling for a shorter than for a longer distance "over the same line" in the same direction, the shorter being included in the longer distance.

CLIFTON J. PRATT, ATTORNEY GENERAL, AND M. R. TODD, FOR APPELLANT.

WADSWORTH & COCHRAN, FOR APPELLEE.

(No briefs.)

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

Appellant was indicted by the grand jury of Johnson county for a violation of the "long and short haul statute" (section 820, Ky. St.). That offense is thus described in the indictment: "The said defendant . . . did unlaw-

fully charge and receive from James N. Meek 24 cents per barrel on flour as railroad charges for transporting flour from Cattletsburg, Boyd county, Kentucky, to White House, Johnson county, Kentucky, and at the same time charge, collect and receive from Frank Preston fifteen cents per barrel on flour (being same class and kind of property delivered to said Meek at 24 cents per barrel for the railroad haul aforesaid) as railroad charges for transporting flour from Catlettsburg, Boyd county, Kentucky, to Paintsville, Johnson county, Kentucky, which last-mentioned haul is a longer distance than first-mentioned haul, and in same direction, and the first mentioned haul from Catlettsburg, Boyd county, Kentucky, to White House, Johnson county, Kentucky, is included in the said longer haul from Catlettsburg, Boyd county, Kentucky, to Paintsville, Johnson county, Ky. Said property was transported and delivered to said James N. Meek and said Frank Preston under substantially same or similar circumstances and conditions; and which railway company operates and did at said time operate a line of railway in the State of Kentucky, which line runs into Johnson county, Kentucky, as aforesaid, at said time not having been authorized by the railroad commission of this Commonwealth to charge less for a longer than for a shorter distance for the transportation of flour." It is not averred, nor do we understand it to be a fact, that appellee then operated a line of railroad from Catlettsburg, Ky., to Paintsville, Ky., but that its southern terminus of that line then was at White House, some 10 or 12 miles north of Paintsville, on the Big Sandy river, a stream navigable by steamboats. The statute under which this indictment was returned is (in part) : If any person owning or operating a railroad in this State, or any common carrier, shall charge or receive any greater compensation in

the aggregate for the transportation of passengers or property of like kind, under substantially similar circumstances and conditions, for a shorter than for a longer distance, over the same line in the same direction, the shorter being included within the longer distance, such person shall, for each offense, be guilty of a misdemeanor, and fines," etc. It is to be noticed that to constitute the offense prescribed by the statute the carrier must have carried (1) property of like kind; (2) under similar circumstances and conditions; (3) must have charged more for the shorter than the longer distance; ‹4) the carrying must have been over the same line; (5) in the same direction, and (6) the shorter must have been included within the longer distance. If any one of these conditions is lacking, no offense against this statute is committed. The indictment fails to say that the two shipments were over the same line. Doubtless the reason of the failure was because it could not have been truthfully alleged. The railroad company, by joint traffic arrangement with another common carrier, a steamboatman—for example, Frank Preston—might have agreed to carry flour from Catlettsburg, Ky., to Paintsville, Ky., using the railway to White House and steamboats to Paintsville, at a rate different and less than was charged by the railway alone for shipping flour from Catlettsburg to White House, and no further. Is that a violation of the statute? Among the earliest efforts to regulate this question of "long and short haul" discriminations by legislation was the interstate commerce act of February 4, 1887. Since then many States have applied its provisions, so far as applicable, to similar transactions within the several States. Congress could have legislated only with regard to traffic and shipments between the States. It could not, and did not, attempt to regulate shipments of freight beginning and end-

ing in the same State. To supplement, and to make this provision effective as a comprehensive scheme, most or all of the State Legislatures have adopted substantially, if not literally, the provisions of the federal act on this subject. The interstate commerce act contained this clause: "That it shall be unlawful for any common carrier, subject to the provisions of this act, to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kind of property, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction; the shorter being included within the longer distance." Act Feb. 4, 1887, c. 104, section 4, 24 Stat., 380 [U. S. Comp. St., 1901, p. 3156]. Whether a joint traffic rate adopted by two carriers, by which they agreed to carry a certain class of freight over their two lines for less than either charged for the same class of freight over a part of its own line, the shorter being included in the longer distance, was a violation of the section just quoted, came on to be considered for the first time, so far as we know, in the case of Chicago & N. W. Ry. Co. v. Osborne, 3 C. C. A., 347, 52 Fed., 912, before Mr. Justice Brewer and Judges Caldwell and Sanborn, sitting as the Circuit Court of Appeals for the Eighth Circuit, October 17, 1892. Mr. Justice Brewer delivered the opinion of the court. In the course of the opinion the learned justice said: "Where two companies owning connecting lines of road unite in a joint through tariff, they form for the connected roads practically a new and independent line. Neither company is bound to adjust its own local tariff to suit the other, nor compellable to make a joint tariff with it. It may insist upon charging its local rates for all transportation over its lines. If, therefore, the two companies by agreement make a joint tariff over

their lines, or any parts of their lines, such joint tariff is
not the basis by which the unreasonableness of the local
tariff of either line is determined." And again (page 350,
3 C. C. A., and page 916, 52 Fed.) : "The use of the word
'line' is significant. Two carriers may use the same road,
but each has its separate line. The defendant may lease
trackage rights to any other railroad company, but the joint
use of the same track does not create the 'same line,' so as
to compel either company to graduate its tariff by that of
the other." Our statute on this subject, which follows the
federal act so closely as to be almost a literal copy, was
enacted April 5, 1893. It must be presumed that the lan-
guage of the federal act was adopted by the Legislature
with knowledge of the construction put upon it by the fed-
eral courts, and that, therefore, a similar meaning was to
be ascribed to the same language under substantially the
same circumstances. The common carriers, in fixing their
traffic rates under the law, may well have relied on the fact
that the same language, used in connection with this same
subject, and under circumstances so nearly alike, would be
construed uniformly by all courts, as it ought to be. Par-
sons v. C. & N. W. Ry. Co., 11 C. C. A., 489, 63 Fed., 903,
followed Chicago & N. W. Ry. Co. v. Osborne, supra. Its
facts grew out of the same tariff rates and arrangement dis-
cussed and decided in Osborne's case. The Parsons case
was carried to the Supreme Court, and was there affirmed.
Parsons v. Chi. & N. W. Ry. Co., 167 U. S., 447, 17 Sup. Ct.,
887, 42 L. Ed., 231. The opinion of the court was delivered
by Mr. Justice Brewer, the case of Osborne, supra, being
cited and expressly approved. In the case at bar appellee
could not have delivered the goods at Paintsville, Ky., by
shipping over its railroad line alone, for the reason that
its railroad line did not reach to Paintsville by some 10

or 12 miles. It was necessary that some other line, by some other carrier, and under some joint traffic arrangement, should be employed, else appellee could not in fact have delivered the goods as charged. The brings us right up to the question whether the words omitted from the indictment, and used in the statute, viz., "over the same line," are essential to constitute the offense denounced by the statute, and whether a traffic arrangement between two carriers owning or operating different lines, so that the freight in question passes in part over each, is included in the expression "over the same line," when used to regulate one of the carriers' traffic over its own line. We hold that the omitted words are essential to make a good indictment, and that, where the freight passes over two or more lines of different carriers, it is not embraced by the terms of the statute when regarded in connection with other carriers' shipments locally over its own line alone.

The judgment of the circuit court sustaining the demurrer to the indictment and dismissing it is affirmed.