Southern Railway in Ky. v. Commonwealth.

CASE 97—INDICTMENT AGAINST THE SOUTHERN RAILWAY IN KEN-
TUCKY FOR DISCRIMINATION IN FREIGHT RATES.—DEC. 1.

# Southern Railway in Ky. v. Commonwealth.

### APPEAL FROM MERCER CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.    REVERSED.

RAILROADS—FREIGHT RATES—DISCRIMINATION—THROUGH SHIPMENT.

Held:    1. Const., section 215, providing that all railway compa-
nies shall transport freight of the same class for all persons
from and to the same points and upon the same conditions, in
the same manner, and for the same charges, does not prohibit
a railway company from charging a through rate which is less
than the sum of the local rates between the two points.

2. A railroad company issued a bill of lading agreeing to transport
freight to a point which was several miles from the nearest
station on its line.    At this station a person who had always
made it a practice to carry freight between the station and the
point to which the goods in question were consigned took
charge of the goods, and carried them to the consignee, with
whom he had a special contract as to the price to be charged
for carrying such goods.    Deducting this price from the through
rate charged by the company, the remainder was less than the
local rate from the point of shipment to the station.    Const.,
section 215, provides that all railways shall transport freight
of the same class from and to the same points for the same
charges.    HELD that, notwithstanding the railroad company had
no express contract with the person who carried the goods from
the railroad station to their destination, nevertheless it was a
through shipment, for which the railroad company was entitled
to charge a sum less than the sum of the local rates.

HUMPHREY, BURNETT & HUMPHREY, ATTORNEYS FOR APPELLANT.

### POINTS AND AUTHORITIES.

1. A through rate which is less than the sum of the local
rates between the point of shipment and the point of destina-
tion, does not constitute a discrimination under section 215, of
the Constitution of Kentucky.

2. Delivery of shipment consigned to Perryville, to a wagon

line at Harrodsburg, was not a delivery to the consignee at Harrodsburg.

3. An unjust discrimination must be knowingly or willfully made in order to constitute an offense under the law.

## AUTHORITIES CITED.

Supplement to Revised Statutes of the U. S., 2d. ed., 1874. 1891, vol. 1, pp. 529-533; Tozer v. United States, 52 Fed. Rep., 918; Parsons v. Chicago & N. W. R. R. Co., 63 Fed. Rep., 909; Illinois Central R. R. Co. v. People, 121 Ill., 304 (12 N. E., 674); Interstate Commerce Commission v. B. & O. R. R., 145 U. S., 276; Louisville & Nashville R. R. v. Commonwealth, 22 Ky. Law Rep., 335-6; Parsons v. Chicago & N. W. Ry. Co., 167 U. S., 447; Southern Pacific Ry. Co. v. Haas, 85 Tex., 401 (17 S. W., 601); Texas Pacific Ry. v. Interstate Commerce Commission, 162 U. S., 197; Robertson & Co. v. Kennedy, 2 Dana, 431; Caye v. Pool's Assignee, 21 Ky. Law Rep., 1600 (55 S. W., 877); Dibble v. Brown, 12 Ga., 217 (56 Am. Dec., 460); Parmelee v. Lowitz, 74 Ill., 116 (24 Am. Rep., 276); Chevallier v. Strahan, 2 Tex., 115 (42 Am. Dec., 639); Potter v. United States, 155 U. S., 445; Spurr v. United States, 174 U. S., 735; State ex rel. Hickman v. Alcorn, 78 Tex., 387 (14 S. W., 663); State v. King, 86 N. C., 603; Mullins v. State, 37 Tex., 338.

HAZELRIGG & CHENAULT, AND J. S. OWSLEY, JR., FOR APPELLEE.

### SUPPLEMENTAL BRIEF.

(Original brief not in the record.)

The cases relied on by appellant only show this: That a through joint rate may be agreed upon by common carriers, which is less in amount than the local rates charged by the same carriers.

When examined it will be found that these same cases hold that it takes an agreement or contract on the part of the carriers with each other, in order to get the benefit of this principle.

The case for the railway therefore, rests upon the assertion that there was a contract, express or implied, between the Southern Railway Company and Irwin, the mail carrier, by which a joint through rate was agreed on for shipments from Louisville to Perryville.

It is argued by appellant that such an agreement or arrangement may be inferred from the course of the business in past

years, and from an old contract made with James in 1889. We may admit that such an inference may be drawn, and we may admit further that had this court been in the shoes of the court below or the jury, the inference of a contract might have been given force, but as overcoming the inference of such a contract we have the direct testimony of Irwin that no such arrangement or contract had ever been made or that he had any notice that he was being treated as a contracting party with the railroad company.

Suppose we give to the defendant therefore, the benefit of all the law he contends for, and try the case as if before a jury; the jury would have been instructed as follows:

"If the jury believe from the evidence that the shipment of the gasoline in question was made under a contract, express or implied, by and between the railway and Irwin, by which a joint rate was established of twenty-one cents for the railway and fifteen cents for the wagon line then they will find the defendant not guilty."

We maintain that the court acting in place of the jury found as a matter of fact, that there was no contract, express or implied, for this shipment at the rate of twenty-one cents and fifteen cents, and this finding of fact is conclusive of the case.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

The grand jury of Mercer county returned an indictment on February 6, 1902, charging that appellant within 12 months before the finding of the indictment, transported a barrel of gasoline for Henry E. Samuels from Louisville to Harrodsburg, Ky., for the price of 26 cents per 100 pounds and contemporaneously therewith transported between the same points a barrel of gasoline of the same class and kind of freight for Wallace Green for the price of 21 cents per 100 pounds; that this was done willfully and knowingly, with intent to discriminate in favor of Green and against Samuels, in violation of section 215 of the Constitution of Kentucky: "All railway, transfer, belt lines, or railway bridge companies shall receive, load, unload, transport, haul, deliver, and handle freight of the same class for all persons, associations, or corporations, from and to the same points

and upon the same conditions, in the same manner and for the same charges, and for the same method of payment." Section 217 of the Constitution, which fixes the penalty for a violation of section 215, is as follows: "Any person, association, or corporation, willfully or knowingly violating any of the provisions of sections two hundred and thirteen, two hundred and fourteen, two hundred and fifteen, or two hundred and sixteen, shall, upon conviction by a court of competent jurisdiction, for the first offense be fined two thousand dollars; for the second offense, five thousand dollars, and for the third offense shall thereupon, ipso facto, forfeit its franchises, privileges or charter rights; and if such delinquent be a foreign corporation, it shall, ipso facto, forfeit its rights to do business in this state; and the Attorney General of the Commonwealth shall forthwith, upon notice of the violation of any of said provisions, institute proceedings to enforce the provisions of the aforesaid sections." The proof on the trial showed that Samuels lived at Harrodsburg, a point on appellant's line of railroad, but that Green lived at Perryville, which was 10 miles away from appellant's road. Twenty-six cents per 100 pounds were charged Samuels for the barrel of gasoline shipped to him, which was billed to him at Harrodsburg. The barrel of gasoline shipped to Green was billed to him at Perryville, and was shipped at the rate of 36 cents per 100 pounds from Louisville to Perryville. When the gasoline reached Harrodsburg, it was delivered to a man named Erwin, who ran a wagon daily from Harrodsburg through Perryville to Mitchellsburg, carrying the United States mail; also persons and property. He took the gasoline to Green, collecting the charges going to the railroad, which were 21 cents per 100 pounds, and paid the amount to the company. Green paid Erwin 50 cents for bringing the barrel over, which was 10

cents less than was coming to Erwin on the basis of 15 cents per 100 pounds.

There was an arrangement between Green and Erwin that Erwin would haul gasoline over at 50 cents a barrel. This arrangement seems to have grown out of the fact that there is a station on the Louisville & Nashville Railroad four miles from Perryville, from which also goods were hauled to Perryville, and Erwin was underbidding to get the hauling on his route. The railroad had for a number of years a published tariff on this class of goods by which the rate was fixed to Harrodsburg at 26 cents and to Perryville at 36 cents. When the rate was first made, about the year 1889, a man named James was running the wagon line, and the rate of 15 cents for the wagon line was then agreed on between him and the the railroad company. After three years he sold out to a man named Tatum, and subsequently Erwin came in under Tatum; but the railroad company had no agreement with Erwin. It simply billed the goods to Perryville as before. Erwin received them at Harrodsburg and delivered them at Perryville. The railroad company did not know that Erwin was making any reduction on the 15 cents per 100 pounds allowed for his part of the haul. The goods were not delivered to the consignees at Harrodsburg, but were required to be carried over by the wagon line and delivered at Perryville. The wagon line hauled for everybody that applied, and also carried for a time the express matter, each owner as he came in succeeding to all the rights and privileges of his predecessors. The proof leaves no doubt that the operator of the wagon line was a common carrier. Robertson v. Kennedy, 2 Dana 431, 26 Am. Dec. 426; Caye v. Pool (108 Ky. 124; 21 R. 1600) 55 S. W. 887, 49 L. R. A. 251; Chevallier v. Straham, 47 Am. Dec. 639.

If there had been a railroad operated by another company

running from Harrodsburg through Perryville to Mitchells-burg, and the barrel of gasoline had been taken by appellant to Harrodsburg, and by the other company to Perryville, appellant receiving 21 cents per 100 pounds for carrying it, and the other company 12½ cents, it could not be maintained that this would have been a violation of section 215 of the Constitution; for it is well settled that a through rate can be made less than the sum of the local rates between the two points. Were it otherwise, all through freight would have to be hauled at the local rates. Railroad Company v. Osborne, 52 Fed. 912, 3 C. C. A. 347; Tozer v. U. S. (C. C.) 52 Fed. 918; Interstate Commerce Commission v. B. & O. R. R., 145 U. S. 276, 12 Sup. Ct. 844, 36 L. Ed. 699; Parsons v. Chicago, etc. R. R. Co., 167 U. S. 447, 17 Sup. Ct. 887, 42 L. Ed. 231.

The fact that the connecting carrier took the goods on a vehicle pulled by horses and not by steam, is not relied on as changing the principle; but it is urged that Erwin had no contract with the railroad company, and that therefore, he took the goods simply as the agent of the consignee, Green. Without considering whether a contract should be implied from the fact that he came in under James, who made the contract with the railroad company, we rest our judgment on the ground that appellant had received the goods consigned to Perryville, and had, by its bill of lading agreed for 36 cents per 100 pounds to transport them to Perryville. This was not a shipment to Harrodsburg. There was in such a shipment and the shipment to Samuels at Harrodsburg no discrimination between shippers of the same class of freight between the same points. Appellant had the right to charge less for part of the through haul than the local rate to that point. When it received the goods and undertook to carry them to Perryville, it was its duty to see that they got to Perryville. Its obligations under such a contract were different from those

under a contract to carry goods to Harrodsburg. It was a through shipment from Louisville to Perryville. Erwin came in under it, and whether there was any contract, express or implied, between it and Erwin, there was an express contract between it and the shipper that it would transport the goods from Louisville to Perryville. We are therefore of opinion that the facts shown establish no violation of the constitutional provision quoted. If there was anything in the evidence indicating an evasion of the constitutional provision by the billing of the goods to Perryville and the delivery of them at Harrodsburg to the consignee in order to discriminate between shippers, a different question would be presented. But the facts show perfect good faith, and also show that only in this way can appellant carry goods to Perryville.

Judgment reversed and cause remanded, with directions to dismiss the indictment.