## DEWEY ELECTRIC HEATING CO. v. ALBANY RY.

### SAME v. CONSOLIDATED CAR-HEATING CO.

(Circuit Court of Appeals, Second Circuit. July 21, 1897.)

PATENTABLE INVENTION—COMBINATIONS—ELECTRIC HEATERS.
   The Dewey patent, No. 464,247, is void for want of patentable invention as to claim 9, which is for a combination of heating conductors adapted to be connected in different ways with the supply conductors, a switch for controlling· said connections, and an indicator, operated by the movement of the switch, to show how the connections stand. 78 Fed. 483, reversed.

Appeal from the Circuit Court of the United States for the Northern District of New York.

Each of the bills in equity to which these two appeals relate was brought in the circuit court for the Northern district of New York, and was founded upon the alleged infringement of claim 9 of letters patent No. 464,247, issued to Mark W. Dewey on December 1, 1891, for improvements in electric heating apparatus. In the Albany Railway Case, which had progressed to final hearing, the court, being of opinion that claim 9 was valid and had been infringed, passed an interlocutory decree for an injunction and an accounting. 78 Fed. 483. Subsequently a motion for an injunction pendente lite against the infringement of the same claim was granted in the case against the Consolidated Car-Heating Company. From the decree and the order pendente lite the defendant in each case appealed.

Fredk. P. Fish and Charles Neave, for appellants.

Charles H. Duell, for appellee.

Before LACOMBE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The patented improvement was especially intended to be an electric heater for electric cars, which would expose a large radiating surface, and yet not occupy much floor space. Its resistance was divided into sections, so arranged that they were detachable, and, if one was injured, the current could be continued to the other sections while the injured member was being repaired. These sections were also adapted to be connected in different ways with the supply conductor, and thus change the volume of the current. The patentee, in his testimony, describes the apparatus as follows:

"The heating apparatus shown and described in this patent is divided into sections, and these sections are arranged and adapted to be connected in different ways with the supply conductor. A switch is shown and described for changing or altering the connections between the various sections of the heating apparatus and the supply conductors, in order that the heat may be regulated and the consumption of electric current varied as desired. The

switch operates an indicator which shows the amount of current being con-
sumed. or how the connections stand."

Claim 9 is as follows:

"In an electric heating apparatus, having heating conductors or sections
adapted to be connected in different ways with the supply conductors, a switch
for controlling said connections, and an indicator, operated by the movement
of the switch, to indicate how the connections stand."

There is no substantial difference between the parties as to the
state of the art of heating by electricity at the date of Dewey's in-
vention, and it is agreed that each of the three elements which are
described in the claim was, separately considered, old at that time.
The patentee says that he was not the first person who made an
electrical heater in sections, or a heater made of several sections
of resistance coils; and Mr. Livermore, the complainant's compe-
tent expert, says that Dewey "was not the first to make a heater
resistance electrically divided so that the portions thereof could be
connected with the supply circuit in different ways," but he thinks
that Dewey "was the first to employ sections, which, as a matter of
construction, were separate, and were electrically separate, except
as the connections were made therefrom to one another, or to the
conducting wires, as required." This is not material with reference
to claim 9, for Mr. Livermore also agrees with the other witnesses
that "the individual elements [of that claim], or substantial equiva-
lents therefor, were separately old at the time of the Dewey pat-
ent." Dewey was not the first to devise an indicator which was
used in some kind of electrical apparatus, and which indicated "how
the connections stand," and was operated by the movement of the
switch; and a switch for controlling the connections of heating con-
ductors with supply conductors was old. The handle of a switch
sometimes served as an indicator, when the number of connections
was small, and the changed position of the handle could be plainly
seen, and therefore whatever each position indicated could easily
be learned by experience. The form of the indicator shown in the
drawings of the Dewey patent, viz. a pointer, and the correspond-
ing marks on the case of the heater, was known before the date
of the Dewey invention. But it is said, and with truth, that the
combination of the three elements, as stated in claim 9, was novel
in an electrical heater; and it is urged that the fact of this novel
combination, and the important effect resulting from it, tend to
characterize it as a patentable invention. We agree with the judge
of the circuit court that the claim is a broad one, and was neither
confined nor intended to be confined to a particular form of heater
or of switch, and that, if it was so confined, it would be worthless.
The improvement was generic in character, and consisted in the
combination of the three elements, irrespective of their particular
form. The gist of the improvement is the indicator in combination
with the two other elements; for those had been, in substance, com-
bined before, and there is nothing in the claim or in the specification
which suggests novelty in their union. For example, the patent to
Carl Seiler, No. 379,822, dated March 20, 1888, describes an electric
heater with a large radiating surface of insulating material. This

surface is provided with a number of projections, around and in contact with which the heating constructions are placed. These projections are made in the form of cones, which are preferably made detachable, for convenience of repair or alteration, and the wires through which the current is to pass are wound around the cones. The patent says:

"If desired, there may be combined with the rows of coils, a commutator or switch, L, similar in character to the commutator, G, and contact fingers, I, at the terminals of the rows of coils, may be adapted to bear on the projections of the commutator cylinder, so that, by turning the latter, more or fewer rows of coils may be included in the circuit, according to the amount of heat required."

The difference which the complainant's counsel suggests between the Seiler and the Dewey structures is this: Dewey's sections are separate heaters, separately cased, held in one frame, and removable from it, whereas Seiler's sections are not separately cased, but are in one single case. Whatever may be the patentable value of this difference as applied to other claims of the Dewey patent,—and we do not deny that it has such value,—it is not of importance as regards the combination of heating sections adapted to be connected in different ways with the supply conductors and a switch for controlling the connections. The Seiler coils are capable of being combined or connected in any desired electrical arrangement. They come within the complainant's construction of that part of claim 9 which speaks of sections adapted to be connected in different ways with the supply conductors, and which is, as expressed by Mr. Livermore, as follows:

"If the sections are so constructed that they may be connected in any of the possible electrical arrangements that are used, * * * they would embody the structure referred to in the ninth claim. If, however, the heater was so made that its resisting wire can only be used in a series arrangement (that is, as a single line from a supply conductor), it would not be a structure forming the subject of the ninth claim."

And further he says:

"I understand that the heater sections described by Dewey are adapted to be connected in any desired arrangement. Of course, some specific arrangement must be chosen when they are put into use; and, whatever arrangement may be chosen, I should still regard the apparatus as embodying the invention, as it retained the capability of being used in other arrangements, if desired, even though in a particular instance such capability was not utilized, and the arrangement first chosen was adhered to."

But the Seiler heater had no indicator, unless the handle of the switch can be called such a device; and, as this heater tells with sufficient accuracy a known method of electrical heating at the date of the Dewey invention, it directly raises the question of importance in the case, which is, was the improvement of claim 9, though novel and useful, patentable? That an indicator which enables the railroad car conductor to regulate accurately and promptly the heat produced by the apparatus is useful, is a matter of course. It indicates to him "which one of the number of possible heat-producing effects is at any time brought into operation." The position of the handle of an uncovered switch would testify to an experienced operator the strength of the current, but it is important to have the apparatus covered by a case; for strong currents are used, and in that event the

presence of an indicator is very helpful to an inexperienced person, for it tells him with precision how to increase or decrease the heat. The utility of an indicator is so well known that its use had become very extensive in electrical apparatus, and the general knowledge of its utility and of its method of construction had caused its employment to become a matter of mechanical, rather than inventive, skill. Thus, Mr. Livermore says, in substance, in regard to the use of indicators in electrical apparatus generally at the date of the Dewey invention, that it was a matter of common knowledge to employ with or apply to a hand operated switch an indicator, when such an adjunct was desirable to facilitate intelligible operation of the switch. To add to the switch of an electrical heater a pointer controlled by the switch, to tell its position and designate the way in which it is to be moved in order to increase or to decrease the heat, seems a matter for the shop rather than for the laboratory. In view of the existing state of facts in regard to the employment of switches and indicators controlled by them which is set forth in the record, as well as in the testimony of the patentee and his experts, as in the testimony introduced by the defendant, we are of opinion that the improvement described in claim 9 was not of a patentable character. The interlocutory decree in the Albany Railway Case is reversed, with costs, and the case is remanded to the circuit court, with instructions to dismiss the bill. The order for an injunction in the case against the Consolidated Car-Heating Company is reversed, without costs, as the actual defendant in each case is the same.