[No. 6945.    Decided April 10, 1908.]

## COEUR d'ALENE & SPOKANE RAILWAY COMPANY, *Respondent,* v. UNION PACIFIC RAILROAD COMPANY *et al.,* *Appellants.*[1]

COMMERCE—INTERSTATE REGULATIONS — VIOLATIONS — AGREEMENT VIOLATING SCHEDULE—CARRIERS. Where connecting railroads had published, pursuant to the interstate commerce act, a schedule of joint rates on shipments of freight cars on their own wheels, which specified $150 for empty cars from St. Louis to Spokane, and if loaded with freight to the account of the carrier, $90 per car in addition to the freight earned, in case of shipments from Missouri river terminals and Port Arthur, Ont., a contract by part of such railroads having lines from Kansas City to Spokane whereby they agreed to ship loaded cars from St. Louis or Kansas City to Spokane free of charge in consideration of the use of the same for carriage of freight, is void, under the interstate commerce law prohibiting agreements at variance with the rates prescribed in the schedule, and the scheduled rate may be collected; and it would be immaterial that the connecting line shipped the cars from St. Louis to Kansas City, loaded, and received the benefit of the freights earned between those points, the contracting carriers having no line from St. Louis to Kansas City.

SAME—CONTRACTS—CONSTRUCTION. A schedule specifying a rate of $90 per car for the shipment of cars from Missouri river points to Spokane on their own wheels, if loaded, in addition to the freight earned, is violated by a carriage under an agreement to ship free of charge in consideration of the use of the cars for the carriage of freight, although the cars were not loaded with through freight to the point of destination, but were used in loading and reloading along the way and to Seattle and other points beyond and not on the route, and were not returned to the point of destination for from three to six months; since there was nothing to show the intention of the parties to the contract that a use should be made of the cars not contemplated by the schedule; and since in civil proceedings the scheduled rates must control where it is not clear that the conditions are dissimilar.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered January 3, 1907, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action on contract. Reversed.

[1]Reported in 95 Pac. 71.

*W. W. Cotton, Samuel R. Stern,* and *James G. Wilson,* for appellants.

*Graves, Kizer & Graves* and *E. H. Belden,* for respondent.

ROOT, J.—In the early spring of 1904, the American Car & Foundry Company, at its plant in St. Louis, was building twenty box cars for the respondent. The respondent desired to have these cars when completed shipped to Spokane. They were, after negotiations between the respondent and the appellants, finally carried from Kansas City to the city of Spokane, over the lines of the appellants. The respondent claims that the appellants agreed to carry these cars free of charge to the respondent, in consideration of the use of the same for the carriage of freight for account of the appellants, and the appellants claim that they were prevented, under the interstate commerce law and a schedule of joint rates of charges established and filed with the interstate commerce commission in accordance with said act, from carrying said cars at any rate less than ninety dollars per car. Upon the arrival of these cars at Spokane, the appellant The Oregon Railroad & Navigation Company refused to deliver the same to the respondent except upon the payment of the rate of $90 per car, or $1,800 in the aggregate. This sum of $1,800 was finally paid under protest by the respondent, who, in November, 1904, commenced action against the appellants to recover the sum so paid.

The appellants in their answer, after a denial of a portion of the respondent's complaint, set up that the Union Pacific Railroad Company owned a line of railroad from Kansas City to Granger, the Oregon Short Line Railroad, a line of railroad from Granger to Huntington; and the Oregon Railroad & Navigation Company, a line from Huntington to Spokane; that these lines formed a continuous line from Kansas City to Spokane, but that each of said roads was separate and distinct, and that neither of appellants had any interest in the earnings or operation of either of the other roads; that ap-

pellants had established a joint tariff of rates of charges governing the transportation of railroad cars over said continuous line from Kansas City to Spokane, and had filed the same, in accordance with the act of Congress, known as the interstate commerce act; that the schedule of joint rates established a rate of $150.80 per car from Kansas City to Spokane, when carried empty, and a rate of $90 per car between said points when used by appellants for the carriage of freight for their own account; that this schedule of tariffs was in force and governed the carriage of the cars in question; that by the interstate commerce law the defendants were prevented from charging or participating in any rate between these points less than that provided in said schedule; that on the 4th of March, 1904, the twenty cars were delivered to the Missouri Pacific Railway at St. Louis for carriage over its line to Kansas City, and to be there delivered to the Union Pacific Railroad Company for further carriage over the line of the Union Pacific and that of the other appellants to Spokane; that, prior to the delivery of the cars to the Missouri Pacific at St. Louis, the American Car & Foundry Company, the agent of the respondent, applied to the agent of the appellants at St. Louis for the quotation of a rate for the transportation of the cars over appellants' lines, and that, contrary to the tariff in force, the agent of appellants quoted to the American Car & Foundry Company a free rate from Kansas City to Spokane; that prior to the time the cars had left St. Louis, the appellants discovered the erroneous quotation of a free rate and notified the said American Car & Foundry Company, the respondent's agent, that appellants could not transport said cars for less than $90 per car and the use of the cars en route; that neither the American Car & Foundry Company nor the respondent withdrew the shipment; that upon the arrival of the cars at Spokane The Oregon Railroad & Navigation Company refused to deliver the same except upon the payment of $90 per car, or $1,800 in the aggregate, and that the same was so paid by the respondent.

The reply put in issue the material allegations in the an-

swer.   The parties hereto, prior to the trial in the lower court, entered into a stipulation of facts.   This stipulation, which is attached to the statement of facts as an exhibit, was the only evidence offered by the plaintiff on the trial.   The defendants offered some additional evidence, from which the following facts are established:

That the appellants are the owners of, and operating, lines of railroad between the points, as alleged in their answer, which form a continuous line from Kansas City to Spokane, but neither of said roads owns, or is interested in the line of the Missouri Pacific, or any road east of Kansas City; that the Missouri Pacific owns a line from St. Louis to Kansas City, which, at said last-named place, has a physical connection with the line of the Union Pacific; that the said route from Kansas City to Spokane is on the most direct and regular route of any lines of railroad owned by defendants, or any of them, for shipments originating at Missouri river points and St. Louis and destined to Spokane; that the plaintiff at all times knew that neither of the appellants had any line, nor was interested in any line, running to St. Louis, or to any point east of Kansas City; that the appellants, together with other roads operating to the Pacific coast, and the Missouri Pacific and other roads operating between the Mississippi river and Missouri river, and with other roads further east forming a continuous line or route from the Mississippi river points and other points further east to the Pacific coast points, had established joint rates or charges passing over continuous lines or routes from all Mississippi river points to Pacific coast points, on practically every line of commodity or freight.   These schedules of rates had been duly filed with the interstate commerce commission, as provided by the said interstate commerce act, and the rates, as shown in said schedules, were in force during all of the times covered by the transactions in controversy in this case.   Page 21 of this schedule, it is stipulated, is the only part thereof which provides a rate for the transportation of cars.   It should be noted that the rate of $90 on loaded cars on their own wheels applies only to

shipments from Missouri river terminals and Port Arthur, Ont. Said page 21 is as follows:

### "INTERMEDIATE" COMMODITY RATES.

| TO "NORTH PACIFIC COAST TERMINALS" AND "INTERMEDIATE POINTS," As designated on Pages 1, 2, 3 and 4. ARTICLES. Minimum Weight, Carloads, 30,000 Pounds, except as Otherwise Provided. | IN CENTS PER 100 POUNDS | | |
|---|---|---|---|
| | FROM | | |
| | Chicago and Com. Points. | Missis-sippi River Com. Points. | Missouri River Com. Points. |
| | C. L. | C. L. | C. L. |
| **RAILWAY EQUIPMENT:** | | | |
| Cars, Narrow Gauge or parts thereof K. D., loaded on Standard Guage cars; also Ballast Cars for Street and Interurban Railways; in cents per 100 lbs...... | 150 | 145 | 135 . |
| Equipment, Machinery and Supplies for Standard Guage Steam or Electric Railways, not owned and operated by Lines members of the Trans-continental Freight Bureau, will be subject to full tariff rates, except as provided below. | | | |
| Empty Freight Cars on their own wheels will be charged from Missouri River Terminals and Port Arthur, Ont., full tariff rates, based on short line mileage by an authorized route to point of actual destination. | | | |
| When loaded with freight (which includes freight consigned to owners of equipment), and destined to points west of Helena, Mont., and Ogden, Utah; $90.00 per car from Missouri River Terminals and Port Arthur, Ont. | | | |
| Full Tariff rates will be charged on freight loaded in the cars. | | | |
| No mileage or per diem allowance will be made on freight or passenger equipment, loaded or empty. | | | |
| Freight and Passenger Cars must be equipped with automatic air brakes, and be subject to inspection in accordance with Master Car Builders' Rules. | | | |
| Staves and Heading, rough or finished; Hoops and Bolts (will not apply on Tank or Vat Stuff), min. C. L. wt. 40,000 lbs ................................... | 82–½ | 80 | 80 |

For "Terminal" Commodity Rates see pages 23 to 88, inclusive.

The entire controversy in this case arises over the question as to whether the provision of the schedule, as set out, has any application to a shipment of the nature of the one involved in this action. The contention of the appellants is that it does apply, and the respondent's contention is that it does not. It further appears, from the facts established by the stipulation, that St. Louis is a Mississippi river point, within the meaning of the schedule, and Kansas City a Missouri river point, and Spokane a North Pacific coast point west of

Helena, Montana, and Ogden, Utah; that the Missouri Pa-
cific is a line from St. Louis to Kansas City; that Kansas City
is on the continuous line from St. Louis to Spokane via the
lines of the Missouri Pacific, Union Pacific and the other ap-
pellants; that the respondent is not a member of the Trans-
continental Freight Bureau; that full tariff rates, referred
to in said schedule with reference to cars moving on their own
wheels, is ten cents per car per mile.   It further appears from
the stipulation that, while the cars in question were being
built, some negotiations were had between the respondent and
appellants concerning the shipment of the cars from St. Louis
to Spokane, which correspondence is set out at length in the
stipulation of facts.   It appears from the correspondence that
the rate contracted for was quoted as a result of a misinter-
pretation of certain telegrams passing between the assistant
general freight agent of the Union Pacific Company at
Omaha and a general agent of appellants at St. Louis.   The
former official, upon hearing of the rate agreed upon, per-
emptorily ordered it cancelled, but the cars, at this time, had
been delivered to the Missouri Pacific Railway for shipment
to Kansas City.   The cars were loaded at St. Louis with
freight for Kansas City, and transported to the latter city
over the Missouri Pacific line.   They went in lots of ten cars
each, the shipping receipt in each instance being as follows:

"FORM 131.
"St. Louis, Dorcas St., 3-3, 1904.
"Wagon No. ——— St. L. I. M. Ry.
"Received in good order from American Car and Foundry
        Company·
    "The following Articles marked as below:
    Directions              Description              Weight
C. D'A. & S. Ry.        10 new box cars.
    Spokane,                C. D'A. & S.
        Wash.           400, 401, 402, 403, 404
Care W. C. Watrous 405, 406, 407, 408, 409
    Supt. Transportation        A. C. & F. Co. pays
    Mo. Pac. Ry., City.         I. M. switching only.
To be loaded to Kansas City,    Corrected ticket.
for delivery to U. Pac. when empty."

Stamped across the face in red ink is the following:

"Car loaded by shippers.   The St. L. I. M. & S. Ry. Co., getting no revenue except for switching only handles it on condition that under no circumstances will it be held responsible for quality, quantity or condition of contents.   Switching $—— per car of 40,000 lbs., excess at proportionate rate.

"T. P. Adams, Agent, Per D. H."

After delivery of their freight at Kansas City, the cars were loaded by these defendants and started for Spokane. Only one car was sent directly to the last-named city.   Two of them carried loads to Seattle and were returned to Spokane from that city.   One carried a load to Wardner, Idaho.   One had a load to Garfield, Washington.   Others delivered freight at different points between Kansas City and Spokane, and were reloaded, some of them several times, and forwarded. None of the cars reached Spokane until June, and some of them did not reach there until September.   There is nothing to indicate that respondent had any dealings with the Missouri Pacific relative to hauling the cars from St. Louis to Kansas City, the arrangements with that company appearing to have been made by appellants' agents.   The cars were in St. Louis. Respondent desired them moved to Spokane.   With that purpose in mind, it opened negotiations with appellants, and to bring about that result the latter negotiated with the Missouri Pacific in order to have the cars go over the latter's line to where they could be transferred to, and carried over, appellants' lines.   The trial of the case in the superior court resulted in a judgment in favor of the plaintiff for the recovery of the excess freight paid under protest as hereinbefore mentioned.   From this judgment, the defendants appeal.

The appellants claim that this was a contract between them and the respondent for transportation of the cars from Kansas City to Spokane.   The respondent claims that the contract called for the carriage of the cars from St. Louis to Spokane. In view of our conclusion upon another branch of the case, we will assume, without deciding, that the contention of the

respondent is correct. The appellants also maintain that the rates on page 21 of the schedule apply to this shipment, while the respondent maintains that said rates have no application to the shipment in question. We are then brought to the question of whether this contract was a valid one in the light of the interstate commerce law. It has been settled by the decisions of the supreme court of the United States that the rates provided and published by railroad companies under and pursuant to said statute must control over the rates agreed upon between the carrier and shipper whenever there is a conflict between the two, and that the carrier is not estopped to collect the full amount prescribed by the rates published under the statute where such amount is in excess of that which the carrier, by contract with the shipper, has agreed to accept for a given shipment. *Texas & Pac. R. Co. v. Mugg*, 202 U. S. 242, 26 Sup. Ct. 628; *Gulf etc. R. Co. v. Hafley*, 158 U. S. 98, 15 Sup. Ct. 802, 39 L. Ed. 910. And it is conceded in this case that respondent is not entitled to recover if the rates in the published schedule apply to this shipment. The appellants maintain that, if this contract be deemed to be one of shipment from St. Louis to Spokane, the contract entered into by respondent and appellants was invalid as being in conflict with § 4 of the interstate commerce law. That section reads as follows:

"That it shall be unlawful for any common carrier subject to the provisions of this act to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kind of property, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance; but this shall not be construed as authorizing any common carrier within the terms of this act to charge and receive as great compensation for a shorter as for a longer distance: *Provided, however*, That upon application to the Commission appointed under the provisions of this act, such common carrier may, in special cases, after investigation by the Commission, be authorized to charge less for longer than for shorter dis-

tances for the transportation of passengers or property; and the Commission may from time to time prescribe the extent to which such designated common carrier may be relieved from the operation of this section of this act." 3 U. S. Com. Stat., page 3155, § 4.

They also maintain that the rate prescribed on page 21, hereinbefore mentioned, applies to a shipment made either from St. Louis or Kansas City, and further claim that, if said rate applies only from Kansas City, the contract between these parties was nevertheless illegal, because it called for a rate less than that published as applying to such shipments from Kansas City to Spokane, and was not a "joint" rate established as by law required.

The respondent urges that the route from St. Louis to Spokane constitutes a "line" separate and distinct from the "line" composed of the appellants' roads extending from Kansas City to Spokane, even though the latter constitute a portion of the former; that by reason of this being a separate "line," as that term is understood and used in § 4 of the interstate commerce law, it was legal to make a rate thereover from St. Louis to Spokane which should be less than the rate from Kansas City to Spokane, arguing that such lesser rate was justified by the different conditions that obtained. It appeared in the evidence that companies having railroads between St. Louis and Kansas City could afford to carry freight cars loaded free of charge, except what they would obtain as freight upon the goods carried; but that on the lines west of Kansas City this condition did not obtain; that over the latter-mentioned lines the greater part of the shipping was towards the east, and that if these railroad companies hauled cars belonging to other people and filled with freight, it would necessitate hauling an equal number of their own cars empty, and that consequently they would reap no advantage from such an arrangement. It was in evidence that there was sharp competition in both St. Louis and Kansas City as to freight destined to points west of Helena and Ogden. Respondent re-

lies much upon the case of *Chicago etc. R. Co. v. Osborne,* 52 Fed. 912, from which it quotes the following:

" . . . where two companies owning connecting lines of road unite in a joint through tariff, they form for the connected roads practically a new and independent line. Neither company is bound to adjust its own local tariff to suit the other, nor compellable to make a joint tariff with it. It may insist upon charging its local rates for all transportation over its line. If, therefore, the two companies by agreement make a joint tariff over their lines, or any parts of their lines, such joint tariff is not the basis by which the reasonableness of the local tariff of either line is determined."

Respondent also places reliance upon *Parsons v. Chicago etc. R. Co.,* 63 Fed. 903, from which it quotes as follows:

"This court held in the case of *Railway Co. v. Osborne,* 10 U. S. App. 430, 3 C. C. A. 347, and 52 Fed. 912, which suit grew out of the establishment by the defendant company of the same freight rate that gave rise to the present action, that, where two connecting carriers unite in putting in force a joint through tariff between given points, such joint tariff is not the standard by which the reasonableness of the local tariff on either line is to be determined. It was decided that, where two connecting carriers unite in a joint tariff, they form practically a new and independent line, and that the joint rate established over such line may be made less than the sum of the local rates, or even less than the local rate of either company over that part of its road constituting a part of the joint line, without violating the long and short haul clause found in the fourth section of the interstate commerce law. The court was careful to limit the foregoing proposition by the proviso that, under the first section of the interstate commerce act, all rates, whether local or not, must be 'reasonable and just.' But it distinctly overruled the contention that a local rate between two points on the same road is necessarily unlawful because it is higher than the rate charged under a joint tariff for a much longer haul over a line which is composed in part of that portion of the road to which the local rate applies."

The case of *Chicago etc. R. Co. v. Osborne, supra,* is authority for the contention that, where two or more companies owning connecting lines unite in a through tariff, they form

practically a new and independent line. But, as we read the opinion in that case, we do not find it an authority for the rate involved in this case. After making use of the language just quoted, Mr. Justice Brewer, who wrote the opinion in that case, said:

"That we may not be misunderstood, we do not mean to intimate that the two companies, with a joint line, can make a tariff from Turner to Cleveland higher than from Turner to Buffalo, or any other intermediate point between Cleveland and Buffalo; for when two companies, by their joint tariff, make a new and independent line, that new and independent line may become subject to the long and short haul clause. But what we mean to decide is that a through tariff on a joint line is not the standard by which the separate tariff of either company is to be measured or condemned."

Respondent urges that the roads of appellants constitute a line from Kansas City to Spokane, bearing the same relationship to the line composed of appellants' roads and the Missouri Pacific as though appellants' roads constituted but one road, and that consequently the rates over this line composed of appellants' roads may be deemed as "local" rates when considered with reference to a rate covering a line from St. Louis to Spokane, and made up of the roads of the Missouri Pacific together with these three of appellants.

It seems to us that the fatal defect in this contract of shipment, even assuming that the differences in conditions might justify this rate from St. Louis to Spokane and notwithstanding the provision in regard to long and short haul of § 4 does not apply, lies in the fact that these appellants and the Missouri Pacific never adopted or published a joint rate such as this contract calls for. It is evident that appellants could not haul these cars over their lines for less than the rate prescribed on page 21 of the schedule, to wit, $90 per car loaded. Appellants had no line between St. Louis and Kansas City. If they agreed to take the cars at St. Louis, as respondent maintains, they could do so and handle them for shipment only by entering into an arrangement with the Mis-

souri Pacific or some other company having a line from St. Louis to Kansas City, whereby a joint rate would be made under the shipment from St. Louis to Spokane, or enter into an arrangement with some such company by which the cars would be shipped under an independent contract from St. Louis to Kansas City, and then, under another contract, taken over their lines to Spokane. If the shipment to Kansas City over the Missouri Pacific was by virtue of a contract covering merely that line, and the appellants then took up the shipment as an independent proposition to be handled over their lines from Kansas City to Spokane, it is difficult to understand why the published schedule rate would not apply, and we do not understand respondent as claiming that it would not apply, its contention being that the contract was one of shipment from St. Louis to Spokane. It is admitted, however, that there was no joint rate upon cars of this character from St. Louis to Spokane, unless the rate provided on page 21 of the schedule applied. There is no contention that the Missouri Pacific was a party to the contract of shipment involved herein. The law forbade these appellants to make a contract to haul these cars from Kansas City to Spokane at a rate less than $90 per car and the freight money earned by the cars. This being true, it certainly does not comport with the spirit of the law if they are permitted to haul the cars not only over these three roads, but also over them and another road, and without any compensation other than the amount received from the freight hauled in the cars.

Appellants could not make a "joint" rate from St. Louis to Spokane, via Kansas City, without joining with some company that had a road from the latter city to St. Louis. Hence there was no such joint rate unless page 21 of the schedule provides such, which respondent disputes. Appellants could not make a so-called "local" rate from St. Louis, as they had no road reaching that city. It is stipulated that appellants had no interest in the Missouri Pacific, and no interest in the freight money which these cars earned in going over that

road from St. Louis to Kansas City, and received no portion thereof. Consequently appellants received no profit on the shipment of the cars prior to their arrival in the latter city. This being true, why should they be permitted to send them on over their lines at less than the schedule rate? Where a rate is made over two or more roads connecting and making a continuous "line," over a portion of which line there is a published joint rate, we understand that the through rate must be that joint rate plus the local rate beyond the further, or to the nearer, terminus of the joint rate "line;" and that this can be obviated only by all of the connecting roads uniting in a joint rate, after notice to the interstate commerce commission, for the entire line made up of all these connecting roads.

In the case of *United States v. Wood*, 145 Fed. 405, the court said:

"And in a case like the one at bar, if a joint tariff had been established by arrangement and filed with the Commission, covering the lines of the Baltimore & Ohio and the Mutual Transit Company to Duluth, neither the Baltimore & Ohio nor the Mutual Transit Company can deviate from that joint tariff, except upon the usual notice to be filed with the Commission; and where, as in this case, there was no joint tariff filed from Philadelphia to Winnipeg, neither company over which this shipment of iron pipe passed could lawfully charge or demand or collect a greater or less compensation for the transportation of property than was specified in its schedule of its joint rates filed with the Commission. In other words, if these carriers desired to form a continuous line from Philadelphia to Winnipeg, and to make a lower rate for the transportation of property than they were collecting on the two joint tariffs then in force covering the same route, then they should have given notice, according to the act, and filed their schedule with the Commission; and so long as they did not do this, they could not lawfully deviate from the rate established, which is the sum of the two joint rates mentioned."

Under this interpretation of the law it would seem that to make the contract herein involved valid there must have been a joint rate, in the amount specified in the contract, and a

schedule of said rate filed with the commission. There being no such "joint" rate on these cars from St. Louis to Spokane, we cannot see what difference it made with the rate over appellants' line from Kansas City to Spokane whether the cars came to them from St. Louis or from any other city or town in this country, or whether the shipment originated in Kansas City. Appellants could not make a contract, as carrier, to ship the cars from St. Louis, as they had no road from that city. Hence, they could be parties, as carriers, to a shipment from St. Louis to Spokane only by a joint tariff arrangement with some road connecting their lines with St. Louis. The Missouri Pacific Company not being a party to this contract and no joint rate arrangement being in existence between it and appellants, we are unable to find authority for any rate upon this shipment less than the joint rate from Kansas City to Spokane plus the rate from St. Louis to Kansas City, the latter being in this case merely the freight earned by the cars.

It is further urged by respondent that the use of the cars contemplated by this contract was not the same as that contemplated by the rates provided on page 21 of the schedule; that those rates were meant to apply to cars loaded with through shipments, and were not intended to have reference to such use as was made of these cars by the appellants under this contract. There is nothing to show what the intention of the parties to this contract was, as to the manner in which the cars should be used in carrying and distributing and being reloaded with freight along the way. It does not appear that the intention of the parties was that the cars should be loaded with freight to their final destination or otherwise. Certainly there is nothing to manifest any intention to make the contract different from that contemplated by the schedule rates found on page 21. Where the facts are such that it is not clear that the conditions are so dissimilar as to render the statute, or the rate published thereunder, inapplicable, such rate will be held, in a civil proceeding, to control. *Missouri*

*Pac. R. Co. v. Texas & Pac. R. Co.*, 31 Fed. 862. It appears to us that this contract, whether it be deemed one of carriage from Kansas City to Spokane or from St. Louis to Spokane, was squarely in conflict with the rates in the published schedule of tariffs, and as such was, under the holdings of the Federal courts, illegal and void. This being true, the appellants were authorized, and it was their duty under the interstate commerce statute, to collect the full rates provided by the published schedule.

The judgment of the honorable superior court is reversed, and the cause remanded with instructions to dismiss the action.

HADLEY, C. J., FULLERTON, CROW, and MOUNT, JJ., concur.

DUNBAR and RUDKIN, JJ., took no part.