**DAVIS, Agent, v. PARRINGTON. SAN FRANCISCO & P. S. S. CO. v. SAME. DAVIS, Agent, v. PORTLAND SEED CO.**

(Circuit Court of Appeals, Ninth Circuit. June 5, 1922.)

Nos. 3799, 3800, 3828.

I. Carriers ⬡⟹28—Greater rate for shorter haul without permission is illegal.

Since the amendment of Interstate Commerce Act, § 4, by Act June 18, 1910 (Comp. St. § 8566), a carrier no longer has the right as it did prior thereto to determine in the first instance whether a dissimilarity in conditions justifies the charge of a greater rate for a shorter haul than for a longer haul over the same route, but any such charge is illegal, unless the

Commission has previously made an order consenting to the higher rate to the intermediate point.

2. **Commerce ⬅︎89—Recovery of excess rate paid for shorter haul is permissible, without resort to Commission.**

The collection by a carrier of a rate in excess of the rate charged by it for a longer haul over the same route, without permission of the Commission first having been obtained, is the collection of an illegal rate, and the excess of such rate over the rate for the longer haul may be recovered by an action in the court without resorting first to proceedings before the Interstate Commerce Commission, since the question is clearly not administrative, and the remedy by action in court exists under Interstate Commerce Act, § 9 (Comp. St. § 8573).

3. **Carriers ⬅︎28—Long and short haul clause is no longer limited to single line.**

Since Interstate Commerce Act, § 4 (Comp. St. § 8566), which originally prohibited a greater rate under substantially similar circumstances for a shorter than for a longer haul over the same line, was amended by Act June 18, 1910, which added the words "or route" after the word "line," the long and short haul clause is no longer limited to transportation over the line of a single carrier, but includes transportation under a joint rate by connecting carriers.

4. **Railroads ⬅︎5½, New, vol. 6A Key-No. Series—Federal Transportation Act did not vest in Interstate Commerce Commission sole jurisdiction over claims against railroad administration.**

Transportation Act Feb. 28, 1920, § 206, giving jurisdiction of claims against the Railroad Administration for violations of the act to regulate commerce to the Interstate Commerce Commission but also providing that actions at law and suits in equity, which prior to federal control could have been brought against the carrier, might, after the termination of the control be brought against an agent designated for that purpose did not vest in the Commission sole jurisdiction over claims for a violation of the Interstate Commerce Act, but an action can be prosecuted by the shipper in the courts in cases where proceedings before the Commission are not a prerequisite to such action.

5. **Appeal and error ⬅︎170(1)—Interstate Commerce Commission's order, not presented to court below, cannot be considered.**

On appeal from a judgment for shippers for the excess of rates collected by the carrier, a general order of the Interstate Commerce Commission increasing the rates, which was not presented to the court below, cannot be considered by the appellate court.

6. **Carriers ⬅︎28—General rate increase order did not authorize new violations of long and short haul clause.**

General Order No. 28 of the Interstate Commerce Commission authorizing a general increase in rates, and permitting carriers to violate the long and short haul clause in so far as necessary to permit the increase to go into effect, merely permitted such violation in cases where the greater charge for the shorter haul had been previously authorized, and did not legalize a continued violation by the carrier, which had previously violated Interstate Commerce Act, § 4, as amended (Comp. St. § 8566).

7. **Carriers ⬅︎28—Possibility of unloading at nearer point held not to authorize violation of long and short haul clause.**

Where goods transported under a joint water and rail rate were in fact unloaded from the vessel into the cars at a dock which made the total haul a greater distance than the haul by vessel alone, for which a greater rate was charged, the fact that the vessel could have been discharged at a dock nearer the point of destination, so that the haul would have been shorter, does not make the rate valid especially where the tariffs of the steamship company provided that cargoes would not be discharged other than at its regular landing place.

⬅︎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Courts &375—Limitation fixed by state statute, and not two-year limitation applicable to proceedings before Interstate Commerce Commission, held to apply to actions to recover excessive freight rate.**

Interstate Commerce Act, § 16, as amended in 1920, providing that all claims for the recovery of damages shall be filed within two years after the cause of action has accrued applies only to claims for damages filed before the Commission, and an action in .court to recover an excessive freight rate is governed by the period of limitation fixed by the state statute.

**9. Carriers &36—Measure of damages in actions for excessive rates collected in violation of long and short clause of Interstate Commerce Act stated.**

In actions by shippers to recover excessive freight rates collected in violation of the long and short haul clause of Interstate Commerce Act, § 4 (Comp. St. § 8566), it was proper to measure the damages by the difference between the rate collected for the shorter haul and the tariff rate for the longer haul.

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Separate actions at law by A. J. Parrington against James C. Davis, Agent, and against the San Francisco & Portland Steamship Company, and by the Portland Seed Company against James C. Davis, as Agent, for the recovery of excess charges by carriers. Judgment for the plaintiff in each case, and defendants bring error. Affirmed, with the addition of an allowance for attorney's fees on appeal.

Arthur C. Spencer, John F. Reilly, and Charles E. Cochran, all of Portland, Or., for plaintiffs in error.

Wilson & Guthrie, of Portland, Or., for defendants in error.

Ben C. Day, of Portland, Or., amicus curiæ.

Before ROSS, MORROW, and HUNT, Circuit Judges.

### Parrington's Cases.

HUNT, Circuit Judge. These cases involve rates on sugar from San Francisco, Cal., to Portland, Or. The San Francisco & Portland Steamship Company, called the Steamship Company, operates a line of steamers between San Francisco and Portland, via Pacific Ocean and Columbia and Willamette rivers, with a regular landing place at Ainsworth dock, in Portland, where connection is had with the Oregon-Washington Railroad & Navigation Company, called the Railroad Company, extending from Portland to North Portland. From December 28, 1917, to February 29, 1920, the Director General exercised control of the steamships. On February 17, 1916, the Steamship Company, in connection with the Railroad Company, put into effect a tariff on sugar in carload lots of a minimum of 30,000 pounds of 12½ cents per cwt. The rate was applicable via the line of the Steamship Company to Portland, thence via the Railroad Company to North Portland, and was in effect until June 25, 1918. On June 25, 1918, the rate to North Portland was raised to 15½ cents per cwt., and continued in effect until August 26, 1920. From August 26, 1920, the rate from San Francisco to North Portland was 19½ cents per cwt. During the several periods mentioned the rate, as per the Steamship Company's

&For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tariff, from San Francisco to Portland and Astoria, from December 28, 1917, to June 25, 1918, was 15 cents per cwt.; from June 25, 1918, to February 29, 1920, 19 cents per cwt.

Thus the situation became one where before June 24, 1918, the local rate from San Francisco to Portland was higher than the joint rate to North Portland, and after June 24, 1918, the local rate from San Francisco was higher to Portland than the joint rate to North Portland. Astoria carried the same rate as Portland. The contention of Parrington is that the route from San Francisco to Portland is shorter than the route from San Francisco to North Portland, and that the route from San Francisco to Astoria is shorter than the route from San Francisco to North Portland. The Railroad Company admits the latter claim, but does not concede that the distance from San Francisco to Portland is shorter than from San Francisco to North Portland.

## The Seed Company Case.

The Seed Company claims that during December, 1918, and January, 1919, at Roswell, N. M., one Mitchell delivered to the Director General of Railroads two carloads of alfalfa seed, consigned to the shipper's order, one car for Yakima, Wash., the other to Walla Walla, Wash., moving over the lines of the Atchison, Topeka & Santa Fé Railway to Denver, thence via Union Pacific lines to Granger, Wyo., thence via Oregon Short Line to Huntington, Or., thence by Oregon-Washington Railroad & Navigation lines to Yakima and Walla Walla, Wash. The Director General delivered the cars to the Portland Seed Company upon surrender of the bill of lading indorsed, and thereafter demanded $1,311.75 for the car going to Yakima, and $715.79 for the car moving to Walla Walla.

The published rate on alfalfa seed in carload lots from Roswell, N. M., to Yakima and Walla Walla, Wash., was $2.44 per cwt.; that rate being a combination of local rates based upon Denver. The through rate from Pecos, Tex., to Yakima and Walla Walla, was $1.-51½ per cwt. The excess of the Roswell rate over the Pecos rate would produce, for the respective cars, certain sums, which, with fees and costs, the Seed Company sued for. The contention is that Pecos, Tex., being a point more distant than Roswell, N. M., on the same line or route over which shipments moved, any sum collected in excess of the Pecos rate was in violation of section 4, the long and short haul clause of the Interstate Commerce Act.

[1] In Parrington's Cases it is argued that the Steamship Company could, without violating section 4 of the act, establish its local rate by water to Portland, and could also concur in a new independent route established by the joint tariffs of the railroad, whereby the route from San Francisco to North Portland was created, and that, while the Steamship Company used part of the lines of the Railroad Company, it was lawful to make a local rate via water line higher than the joint rate via the rail and water line. The accuracy of this reasoning depends upon whether the case is to be considered in recognition of the well-established rule that by the amendments to section 4 of the Interstate Commerce Act (Comp. St. § 8566), providing that the carrier

has no right to charge more for a shorter haul over the same line or route than it charges for a longer haul, the shorter being included within the longer distance, the carrier cannot make such charge for the shorter haul until after it shall have presented the matter to the Interstate Commerce Commission and obtained from that body an order permitting the greater charge to the shorter point.

Prior to the amendments of 1910, in the first instance, the carrier could under section 4 determine whether or not there was a dissimilarity of circumstances and conditions which authorized it to charge more for a shorter than for a longer haul over the same line. Since the Act of June 18, 1910, the right of the carrier in the first instance was taken away, leaving the prohibition of the long and short haul clause absolute until the Interstate Commerce Commission could hear the matter, and, if it might see fit, make an order consenting to the higher rate to the intermediate point. In the Intermountain Rate Cases, 234 U. S. 476, 484, 34 Sup. Ct. 986, 990 (58 L. Ed. 1408), the court speaking through the Chief Justice, after discussing the state of the law prior to and after the amendments, said:

"It is certain that the fundamental change which it makes is the omission of the substantially similar circumstances and conditions clause, thereby leaving the long and short haul clause in a sense unqualified, except in so far as the section gives the right to the carrier to apply to the Commission for authority 'to charge less for longer than for shorter distances for the transportation of persons or property,' and gives the Commission authority from time to time 'to prescribe the extent to which such designated common carrier may be relieved from the operation of this section.'" United States v. Louisville & Nashville R. Co., 235 U. S. 314, 35 Sup. Ct. 113, 59 L. Ed. 245; Skinner & Eddy v. United States, 249 U. S. 566, 39 Sup. Ct. 375, 63 L. Ed. 772.

[2] Inasmuch as no permission from the Interstate Commerce Commission was obtained by the carriers concerned in the present cases, the greater charge to the shorter point was prohibited by the statute referred to. It was an illegal rate, unless the effect of failing to obtain the consent of the Commission can be avoided by regarding the question as purely administrative, to be submitted first to the Interstate Commerce Commission before appeal lies to the judicial power. The later decisions of the Supreme Court (Penn. R. R. Co. v. International Coal M. Co., 230 U. S. 184, 33 Sup. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315; Penn. R. R. Co. v. Puritan Coal Co., 237 U. S. 121, 35 Sup. Ct. 484, 59 L. Ed. 867; Penn. R. Co. v. Sonman Coal Co., 242 U. S. 120, 37 Sup. Ct. 46, 61 L. Ed. 188), however, point out the distinction between an assault against the rule of the statute and an unequal and discriminatory application of the rule. Recently, in St. Louis, I. M. & S. R. Co. v. Hasty & Sons, 255 U. S. 252, 41 Sup. Ct. 269, 65 L. Ed. 614, where it was contended that a proper interpretation of a railroad tariff called for administrative consideration, the court said that the matter was so free from doubt that it was unnecessary to apply to the Commission for construction. The present case fairly illustrates the principle, for the question here involved is clearly not administrative as to what rate is reasonable, but whether, under the circumstances already outlined, the only way provided for charging more for a short than for a long haul has been followed. If it has not,

there is a remedy by action in damages in court. Section 9, Interstate Commerce Act (Comp. St. § 8573).

[3] Counsel have argued that in the carriage from San Francisco to North Portland the line to North Portland is distinct from that to Portland, and they cite C. & N. W. R. Co. v. Osborne, 52 Fed. 912, 3 C. C. A. 347, as authority for their view that the local rate via water line or route could be higher than the joint rate via rail and water line or route. In the case cited the court was considering the fourth section of the Act to Regulate Commerce, when it was unlawful for the carrier to charge greater compensation for transportation of property under substantially similar circumstances and conditions for a shorter than for a longer distance over the same line in the same direction; the shorter being included within the longer distance. Judge Brewer emphasized the use of the word "line" in the fourth section as it then read, and held that, where two companies owning connecting lines of road unite in a joint tariff, they form for the connective rates a new and independent line, and that neither is bound to adjust its own legal tariff to suit the other, nor is it compelled to make a joint tariff with it. But, when Congress amended the act in 1910, and saw fit to add, after the words "over the same line," the additional words "or route," it called for a new, and we believe a broader, interpretation by which the word "route" is not to be regarded as wholly synonymous with the word "line." We believe that something more was meant, and that the effect was to require broader construction, by regarding the words as pertaining to instances where carriers join their lines and then make a route, and that freight which is carried over the same route may be carried over a single line or a joint line. R. R. Commission of Wisconsin v. C., B. & Q. R., 257 U. S. 563, 42 Sup. Ct. 232, 66 L. Ed. —— (Feb. 27, 1922). We have here, too, the circumstance that the Oregon-Washington Railroad & Navigation Company controlled and operated the San Francisco & Portland Steamship Company.

[4] In a brief filed by counsel as amicus curiæ it is urged that by section 206 of the Transportation Act of 1920 (U. S. Stat. 1920, p. 461) jurisdiction of claims against the Railroad Administration for violations of the Act to Regulate Commerce is taken from the courts and vested solely in the Interstate Commerce Commission. We cannot so hold. There is no language in the Transportation Act which indicates to us that Congress intended to make such a departure from the practice which had theretofore prevailed, and we believe that the contrary intent is to be gathered from the provision of section 206(a), which provides that actions at law, suits in equity, and proceedings in admiralty, "of such character as prior to federal control could have been brought against such carrier, may, after the termination of federal control, be brought against an agent designated by the President for such purpose." There is also a further provision that such action may be brought "in any court which, but for federal control, would have had jurisdiction of the cause of action, had it arisen against such carrier." We find no ground for saying that the Transportation Act has changed the jurisdiction of any cause of action with respect to the subject-matter, and inasmuch as the cases under examination could

have been brought in court against the carrier, if the lines had been under private control when the shipments were made, the causes of action can be maintained against the agent designated by the President, to recover where the shipments moved during the time the federal government was in control.

[5] A further contention is that the increase in rates made by what is generally known as General Order 28, the order of the Interstate Commerce Commission which permitted the increases to go into effect, and which permitted carriers to violate the long and short haul clause in so far as necessary to permit the increase to go into effect, operated to make valid all violations of the long and short haul clause, irrespective of whether or not the violation was caused by an increase in rate, or had existed prior to such order and without authority of the Commission permitting the same. Counsel as amicus curiæ has urged this question, but the plaintiffs in error did not raise it, and it does not appear to have been considered by the lower court. It is therefore not for decision. In Robinson v. B. & O. R. Co., 222 U. S. 511, 32 Sup. Ct. 114, 56 L. Ed. 288, the Supreme Court declined to take notice of a decision of the Interstate Commerce Commission which was not mentioned in the pleading or in the agreed statement of facts.

[6] It may well be doubted, however, whether under the Federal Control Act (40 Stat. 451, § 10 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾j]) Congress authorized the Railroad Administration to disregard the long and short haul clause without first applying to the Interstate Commerce Commission and obtaining the contemplated order relieving it. It is true that in certain instances by General Order No. 28, as to increases in rates, violations of the long and short haul clause were authorized. The effect was that, where there had been a violation of section 4 before General Order No. 28 was in force, the increase of rates increased the extent of the violation; but the order did not legalize a violation by a carrier which had previously violated the section.

[7] It is said that the steamers could unload sugar at the municipal pier, which is below the Ainsworth dock in Portland, and at such lower point transfer to the railroad company. But the rates to North Portland via Portland were established before any landing place other than Ainsworth dock was contemplated. Moreover, the tariffs of the Steamship Company provided that cargoes would not be taken or discharged other than at its regular landing place, which is Ainsworth dock in Portland, except at the option of the company.

[8] Plaintiffs in error plead the statute of limitations as to certain of the claims. Commerce Act, § 16(2) (Comp. St. § 8584[2]), provides that all claims for the recovery of damages shall be filed within two years after the cause of action has accrued, and not after. Prior to the amendment of 1920 (41 Stat. 491), section 16 required all complaints for the recovery of damages to be filed within two years from the time the cause of action accrued, and not after, and that a petition for the enforcement of an order for the payment of damages should be filed in the circuit court or state court within one year from the date of the order, and not after. The language of the statute puts

the limitation period upon proceedings before the Commission, and not upon proceedings in court on the orders of the Commission. Phillips Co. v. Grand Trunk Western R. Co., 236 U. S. 664, 35 Sup. Ct. 444, 59 L. Ed. 774, cited by the plaintiffs in error, was an action instituted in court, but it belonged to the class of cases which had to be instituted primarily before the Commission. Such a proceeding was instituted by one of the plaintiffs before the Commission, and the rate therein involved had been held to be unreasonable. Then, after the Commission rendered its decision, Phillips commenced a direct proceeding in court, based upon the finding of the Commission in the other proceeding. The court treated the inquiry and the finding of the Commission as general in its operation, and held that the proceedings inured to the benefit of persons having similar claims to those presented by the other persons, and that such others, after the decision of the Commission, could sue directly in court, and that all persons who were required to go before the Commission primarily were affected by the statute of limitations as applied to the originator of the proceeding before the Commission.

We do not understand the decision as holding that the statute limits the proceedings before courts for the recovery of damages for violation of the Interstate Commerce Act. It is of significance that in the act of 1920 there is no language of limitation against the shipper in recovering damages in the courts for violation of the act, and we regard it as fairly inferable that the statute of limitations remained as it was before 1920. This leaves the period of limitation to be determined by the statute of the state, in this instance the law of Oregon (section 6, Laws Or. 1920), which fixes the period of limitation for the recovery of a liability created by statute, other than a penalty or forfeiture, at six years. C. & N. W. R. Co. v. Ziebarth, 245 Fed. 336, 157 C. C. A. 526; Morrisdale Coal Co. v. Penn. R. Co., 230 U. S. 304, 33 Sup. Ct. 938, 57 L. Ed. 1494.

[9] Another point advanced by the plaintiffs in error is that the difference between the rate to North Portland and to Portland was improperly used as a measure of damages. The question is like that presented to this court in California Adjustment Co. v. Southern Pacific Co., 237 Fed. 954, where it was held that the rule adopted by the District Court is the correct one. In its essential respects the case of the Seed Company is covered by what we have said of the Parrington Cases, where the rates appear to have been made in violation of the long and short haul clause. United States v. Louisville & Nashville R. Co., 235 U. S. 314, 320, 35 Sup. Ct. 113, 59 L. Ed. 245.

The judgments of the District Court are affirmed, and, in addition to the amounts allowed by that court as attorney's fees, fees for conducting the cases in this court are also allowed. Mills v. Lehigh Valley (D. C.) 226 Fed. 812; N. Y., N. H. & Hartford R. Co. v. Ballou & Wright, 242 Fed. 862, 155 C. C. A. 450. A reasonable fee in case No. 3799 in this court is $600; in case No. 3800, $1,000; and in case No. 3828, $100.

With these additions, the judgments are affirmed.