City of Staunton et al., Appellees, v. Cole & Fauber
et al., Appellants.

Gen. No. 8,303.

Opinion filed June 11, 1929.   Rehearing denied October 9, 1929.

PAUL J. LUKER and COBBS, LOGAN & ALEXANDER, for
appellants.

CHARLES S. ANDRUS, H. H. WILLOUGHBY, E. D GEORGE, OMER POOS and JESSE PEEBLES, for appellees.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Macoupin county on a bill in chancery in the nature of an interpleader, brought by the City of Staunton as complainant.

The bill sets out that a contract had been let by the city to Cole & Fauber, contractors, for the construction of a water supply system; that the Federal Surety Company signed the contractors' bond; that the original contractors, after working about a year, had defaulted and abandoned the work; that the Surety Company had continued with the work, and had substantially completed it; that the city had paid to the contractors $190,815.18, and to the Surety Company $7,300 and that it had on hand, applicable to the contract, and in the bank the sum of $28,024.14; that various persons had filed lien notices under the statute, claiming to have furnished labor and materials to the contractor and claiming rights in the fund; that the contractors and the Surety Company were claiming some interest in the fund; and prayed that the court decree the rights of the parties.

The defendants named in the bill included, in addition to the contractors and the Surety Company, the claimants who up to that time had filed notices of liens with the city.

In a supplemental bill filed by the city the same allegations were made; but additional lien claimants, those filing after the time of the first bill, were named as additional defendants. From time to time various others not named as defendants in either bill filed intervening petitions or voluntarily entered their appearance. Neither the contractor nor the Surety Company made any claim to the fund.

The cause was referred to the master in chancery, who took the evidence and filed a report of his findings and conclusions, and which report, with one exception (wherein the master had recommended a judgment against the Federal Surety Company), was approved and confirmed. This appeal is by two of the defendants—lien claimants.

The appeal of the Alton Brick Company is based solely on the fact that the master and the court allowed participation in the fund to various claimants who were not entitled to participation.

The allowances appealed from on the grounds that they were not for lienable items, or that they are for improper amounts, came under four heads:

1. Staunton National Bank, $4,539.37, given lien for money loaned to the contractors.

2. Doctors D. L. Bley, C. H. Zohler and A. C. Goff given liens totalling $91.50 for medical services rendered to employees of contractors.

3. A. C. Kurz, a lien in the amount of $16.50 for printing and stationery; Staunton Telephone Company, a lien in the amount of $55.60 for telephone service.

4. James P. Clow & Sons, claim excessive by $400.

It is claimed the effect of the above allowances is to reduce materially the share of the appellants and of other valid lien claimants in the funds in the hands of the city.

The appeal of the Mount Olive Oil Company is based on three grounds:

1. The allowance on a lien against the fund to the Staunton National Bank for money loaned to the contractor.

2. The recognition by the master and the court of an assignment by one Danklef, a subcontractor (to whom the Mount Olive Oil Company sold gasoline, etc.), to one C. Clavin of Danklef's participation in

the account to the exclusion of the Mount Olive Oil Company's claim.

3. Failure of the master to allow a lien claim to the Mount Olive Oil Company for gasoline, etc., sold to Danklef, the subcontractor.

As to the claims of Dr. D. L. Bley, Dr. C. H. Zohler and Dr. A. C. Goff, given liens amounting to the sum of $91.50 for medical services rendered to employees of contractors, the court was in error in allowing each of these items, as liens are not allowed by statute for services of that kind. (*McMillan v. Casey Co.*, 231 Ill. App. 422, 311 Ill. 584; *Hoier v. Kaplan*, 313 Ill. 448; *Rittenhouse & Embree Co. v. Brown & Co.*, 254 Ill. 549 and *Siemer Milling Co. v. Moritz*, 227 Ill. App. 459.)

It was likewise error to allow the claim of A. C. Kurz, amounting to $16.50, for printing and stationery, and the claim of the Staunton Telephone Company, amounting to $55.60, for telephone service.

As to the claim for a lien by the Mount Olive Oil Company, appellants' statement in their brief as to the facts is unchallenged by appellees. That statement is as follows:

The evidence with respect to the Mount Olive Oil Company is that this company had furnished oils, greases and gasoline to William J. Danklef, who had a contract with Cole & Fauber for moving the earth for the reservoir dam. Their evidence established an undisputed balance due from Danklef to the amount of $1,156.39. It was also undisputed from the evidence that Danklef did this work on the job and that the materials sold by the Mount Olive Oil Company had been consumed on the job in the process.

However, an assignment from Danklef of all of his claim out of the fund (which the master found to be $5,295.65) to one C. Clavin appears. This assignment finds its way somehow in the exhibits attached to the master's report. There is no place in the transcript

showing that it was introduced. There was no evidence concerning it what,soever. The assignment is dated March 10, 1927, which is a date long after Cole & Fauber quit the contract, and long after Danklef had done the work, and long after the indebtedness to the Mount Olive Oil Company from Danklef accrued.

The master recognized this assignment, holding in his report and being sustained by the trial court, that Clavin was entitled to receive this money.

As to this claim appellees contend that the Mount Olive Oil Company, being merely a subcontractor and having had no dealings with Cole & Fauber, is not entitled to any allowance and that the claim in full was properly allowed to Clavin, assignee of William J. Danklef. In this, counsel and the court below are in error. (*Siemer Milling Co. v. Moritz, supra; Alexander Lumber Co. v. Farmer City,* 272 Ill. 264, 275.) The full claim of William J. Danklef amounted to $5,295.65 and by the decree was ordered paid to his assignee, C. Clavin. This was error. The claim of the Mount Olive Oil Company, amounting to $1,156.39, should have been allowed and the same amount deducted from the Danklef claim allowed to Clavin.

A claim was allowed to James B. Clow & Sons in the sum of $3,916.35. It is substantially conceded by all parties that this was the amount of the claim of James B. Clow & Sons as originally submitted, and that there should be a deduction of $400 from this allowance which is hereby ordered.

Appellants assign error upon the allowance of the sum of $4,539.37 to the Staunton National Bank. As to the situation surrounding the merits of this claim the record shows the following state of facts:

At the time Cole & Fauber were awarded the water supply contract they entered into negotiations with the bank officials supposedly looking toward temporary financing. They opened a regular customer's account,

depositing some of their own money (not out of this contract), and depositing from time to time other sums not derived from this contract. They also deposited sums derived from another contract with the City of Staunton for work going on at the same time, but which is not included in this suit. Out of this amount checks were drawn in payment of labor and materials and for other purposes, on both contracts.

At the same time the checking account was opened, another account was created, known as "The City of Staunton in escrow for Cole & Fauber." This account apparently was opened by joint agreement of Cole & Fauber, the bank, the city, and one Watson of Chicago, to whom the contractor had sold the water certificates which were to be issued to him in payment for the work on this particular contract.

When a portion of the work was done, the engineer for the city would issue his "estimate," of the amount of labor and material finished or in place; it would be approved by the city council, through recommendation of the board of local improvements, and water certificates equal in face value to the net amount of the estimate, which was 85 per cent, would be issued. These certificates would be sent by the bank to the Chicago Title & Trust Company, where Mr. Watson would pay the agreed purchase price for same (85 per cent of the face) to the Trust Company. The Trust Company would deposit the amount with the Chicago correspondent of the bank to the credit of the bank. Upon notification of this transaction, the bank would credit the escrow account with a like amount. The city would then issue its voucher or order payable to Cole & Fauber for the amount thus deposited, and this sum, upon deposit of the order or voucher, would be credited to the Cole & Fauber's customers' accounts where it was mingled with Cole & Fauber's own money and the money received from the other contract.

Whenever the contractors ran short of funds they would borrow money from the bank, giving their unsecured demand notes. The proceeds of these notes, in each instance the face value, were deposited to Cole & Fauber's customers' accounts. When funds would reach the customers' accounts through the city's orders on the escrow account, enough of the customers' account would be appropriated to pay the notes with interest at 6 per cent from date.

There was evidence introduced that at the beginning Cole & Fauber had given an assignment of the sums to be received by them from the city under the contract as security to the bank; but neither the bank's original intervening petition nor its notice of lien served on the city, nor the notes themselves make any reference to this assignment.

When the contractors failed on January 8, 1927, there were three unpaid demand notes of the contractor in possession of the bank totaling $9,500. There was a balance in the Cole & Fauber's customers' account of $5,107.81. This amount was appropriated by the bank and credited to the notes, one note being credited with $3,000; one with $2,107.81; and one receiving no credit, leaving a balance on that day of $4,392.19.

Suit was thereafter brought in the circuit court by the bank against Cole & Fauber on the notes and judgment entered for $4,539.37 on May 27, 1927. The claim made in this proceeding is on the notes, not on the judgment, and on the strength of the alleged assignment for the right to withhold this total sum from the escrow account, and prior to the rights of the claims of material, men, labor, etc. The master and the court allowed this claim in full with the interest which had accrued up to the date of the judgment, with interest thereafter at 5 per cent and as a prior lien on the fund ahead of all others except court costs.

As to the merits of this claim, it is elementary that Cole & Fauber's assignment to the bank could not have passed title to the bank of any funds or parts of the contract price that Cole & Fauber did not earn. The original contract price for constructing the improvement was $229,936.06, of which Cole and Fauber had been paid $190,815.18 at the time they abandoned the uncompleted work about one year after the commencement thereof. Thereupon the Federal Surety Company, being surety for Cole & Fauber, had completed the improvement and had been paid by the city the sum of $7,300 to apply upon the contract price. This left in the hands of the City of Staunton the sum of $28,024.14 to apply upon said contract, some minor items having been expended in some other way. Nothing in this record shows or tends to show the proportionate amount of the work completed under the contract by Cole & Fauber at the time of the abandonment other than that the payments made were estimated to be 85 per cent of the work completed. The record is absolutely bare of any proof as to the cost and expenses of completing the contract after the failure of Cole & Fauber, and there is nothing in the bill of complaint or in the proof tending to show what portion of this improvement had been completed by Cole & Fauber at the time of their failure or at what cost and expense any surety would be in completing the work. Plainly nothing could pass by Cole & Fauber's assignment to the bank until some increment had been earned upon the contract, and it is equally plain that if the bank had permitted Cole & Fauber to draw out all of the escrow account or all the moneys they had earned upon the contract there would be nothing upon which the assignment could operate. Certainly Cole & Fauber could not assign the proceeds of what they had failed to do, and this record does not show any funds earned upon which the assignment

could operate. The whole course of dealing between the bank and Cole & Faube., the entering of the notes in judgment—into which the notes became merged—shows that the bank was making loans to the contractors and relying upon their personal security. This is a mere attempt to establish a lien for money loaned and it was error for the court to allow the claim of the Bank of Staunton. (*Cairo & V. R. Co. v. Fackney,* 78 Ill. 116; 40 Corpus Juris, page 77, note 47.)

The Federal Surety Company was made a party to the intervening petition. This company was surety for Cole & Fauber to the City of Staunton by bond in which it agreed "to stand to and abide by and well and truly keep and perform all the agreements, terms and conditions of said contract on his part to be kept and performed, and shall also pay for all labor performed or furnished and for all materials and equipment used in the carrying out of said contract," etc. The Federal Surety Company made no claim to any part of said funds. The fund brought into court by the City of Staunton will only pay about 60 per cent of the allowed and unpaid claims. Certain of the creditor defendants contended that a decree should be entered in this cause against the Federal Surety Company for the balance of the unpaid claims. The master recommended that such a decree be entered and overruled the objection of the Surety Company. The exception made before the chancellor by the Surety Company was sustained and cross-errors have been assigned by certain creditors thereon to the decree as entered. The question is therefore raised on this appeal whether such a decree should have been entered against the Federal Surety Company.

As we understand the rule in this State in an interpleader suit the only question is the ownership of the identical fund brought into court, and independent questions and accountings among defendants will not

be entered upon. (*Dyas v. Dyas,* 231 Ill. 367, 374; *Galpin v. City of Chicago,* 269 Ill. 27; *Byers v. Sansom-Thayer Comm. Co.,* 111 Ill. App. 575, 577; *O'Connell v. National Surety Co.,* 185 Ill. App. 458, 459.)

In *Dyas v. Dyas, supra,* the court said: "In a proceeding of this character the question before the court is, ''Who is entitled to the identical property brought into court?'' It is not the province of the court in such a proceeding to permit a general accounting between the defendants and decree the payment of the balance found due out of the money so brought into court, which is, in fact, the property of the debtor, in the absence of. any equitable claim thereon in favor of the creditor. For example: If the son in this case owed the father $500 for borrowed money, evidenced by an unsecured promissory note, the father could not bring that note into court and obtain a decree that it should be satisfied out of the proceeds of the sale going to the son. The mother here has no claim against the bank for any part of the $6,300, which by the contract is to be paid to the son. Any claim which she has against her son which might otherwise be an equitable charge upon this sum of $6,300 ceased so to be when she entered into the contract of November 8, 1905. It follows that it was not the duty of the court to determine whether or not her son was indebted to her. *Sherman v. Partridge,* 4 Duer (N. Y.) 646; *Willson v. Salmon,* 45 N. J. Eq. 131; 4 Pomeroy's Eq. Jur. (3d ed.) sec. 1320.

"This precise question has not before been determined by this court, but it was considered by the Appellate Court for the First District in the case of *Byers v. Commission Co.,* 111 Ill. App. 575, where a like conclusion was reached."

The court did not err in dismissing the Federal Surety Company from the case as it claimed no interest in the fund.

For the errors pointed out, the decree of the circuit court of Macoupin county is reversed and the cause remanded to that court with directions to enter a decree in accordance with the views expressed in this opinion.

*Reversed and remanded with directions.*