**TEXAS CO. v. SCHRIEWER et al.**

No. 1026.

Court of Civil Appeals of Texas. Waco.

March 12, 1931.

Appellees' Motion for Rehearing Denied April 16, 1931.

Appellant's Motion Granted in Part April 16, 1931.

Second Motion for Rehearing Denied May 7, 1931.

142

F. T. Baldwin and E. S. Morris, both of Houston, for appellant.

Henderson & Hoyle and R. V. Armstrong, all of Bryan, and A. S. Rollins, of Dallas, for appellees.

ALEXANDER, J.

This was a suit in the district court of Brazos county by the Texas Company against Paul Schriewer, Allen Smith, and the American Surety Company of New York to recover from Paul Schriewer the sum of $12,-941.81 for material furnished him as a subcontractor in the construction of a state highway in Young county, and against Allen Smith as principal and American Surety Company as surety on the contractor's bond executed by Allen Smith in compliance with the provisions of Revised Statutes, art. 5160 (as amended by Acts 1929, 41st Leg., c. 226, § 1 [Vernon's Ann. Civ. St. art. 5160]), and against Allen Smith and American Surety

Company on a release bond executed in compliance with the provisions of article 5472b—1 (as added by Acts 1929, 41st Leg., 2d Called Sess., p. 154, c. 78 [Vernon's Ann. Civ. St. art. 5472b—1]). A trial before the court without a jury resulted in a judgment for plaintiff against Paul Schriewer for the sum of $12,941.81, and that plaintiff take nothing against defendants Allen Smith and American Surety Company. The plaintiff appeals.

Allen Smith entered into a contract with the state highway department for the construction of a public highway in Young county and executed a bond with the American Surety Company as surety for the faithful performance of the contract. . He sublet a part of the contract to Paul Schriewer. The court filed findings of fact in which it was found that the Texas Company furnished Paul Schriewer for the construction of said highway, material of the value of $12,941.81, and that all of such material was used in the construction of said highway, and that same has not been paid for. The Texas Company, however, did not file with the county clerk of Young county an itemized list of the material so furnished by it within ninety days from the date of the delivery of such material as provided in Revised Statutes, art. 5160. After the state highway department had paid Allen Smith approximately $100,000 on said contract and while there was still owing him thereon a balance of $23,414.58, the Texas Company notified the state highway commission of its claim for the material so furnished Paul Schriewer. Allen Smith as principal, and American Surety Company as surety, executed to the state highway department a release bond as is provided in article 5472b—1, and obtained a release of the balance due under said contract. The trial court held that appellant could not recover against Allen Smith and American Surety Company on the original bond given for the performance of the contract because appellant did not file an itemized statement of its account with the county clerk of Young county within the time provided by law. The court also held that appellant could not recover against Allen Smith and American Surety Company on the release bond because, (a) the appellant did not furnish the material to the original contractor, but furnished the same to a subcontractor, (b) notice was not given before the first payment was made on the contract, and (c) notice of appellant's claim should have been given to the state treasurer and not to the highway commission.

Since the appellant did not file with the county clerk of Young county an itemized list of the materials furnished by it within ninety days after the delivery of the same as provided by article 5160, it cannot recover on the original bond given for the

faithful performance of the contract. If it is to recover at all, it must recover by virtue of the provisions of article 5472a, on the release bond given in compliance with the terms of Revised Statutes, art. 5472b—1. Article 5472a reads as follows: "That any person, firm or corporation, or trust estate, furnishing any material, apparatus, fixtures, machinery or labor to any contractor for any public improvements in this State, shall have a lien on the moneys, or bonds, or warrants, due or to become due to such contractors for such improvements; provided, such person, firm, corporation, or stock association, shall, before any payment is made to such contractor, notify in writing the officials of the State, county, town or municipality whose duty it is to pay such contractor of his claim." (Acts 1925, 39th Leg., ch. 17, p. 44, § 1 [Vernon's Ann. Civ. St. art. 5472a]). ·

█ Does one who furnishes labor or material for public improvements to a subcontractor, and not to the general contractor, have a lien on the funds due or to become due for the construction of such public improvements? The statute does not, by express terms, include one who furnishes labor or material to a subcontractor. It reads: "That any person * * ·* furnishing any material * * * or labor to any contractor for any public improvements in this State, shall have a lien on the moneys * * * due or to become due to such contractors for such improvements," etc. In construing statutes, it is the duty of the court to ascertain and give effect to the intention of the Legislature. In order to arrive at such intention, resort may be had not only to the language of the act, but the occasion and necessity of the enactment, the evils to be remedied, the object to be secured, and its relation to existing legislation on the same subject. The court should give to the statute that construction best calculated to secure the benefits intended, and, for the purpose of arriving at such intention, may consider the construction placed on prior similar acts and the established policy of the legislature as disclosed by a general policy of legislation.

█ For many years it has been the established policy of the state, as disclosed by general legislation on the subject, to secure the laborer or materialman by a lien to insure payment for the labor and material so furnished by him. One furnishing labor or material, either to a general or subcontractor, for private improvements is given a lien on the improvements constructed with the labor or material so furnished. Bassett v. Mills, 89 Tex. 162, 34 S. W. 93; Padgitt v. Dallas Brick & Construction Co., 92 Tex. 629, 50 S. W. 1010; Wilson v. Sherwin-Williams Paint Co., 110 Tex. 156, 217 S. W. 372. Mechanics and laborers in almost every known trade are now given liens or some other cumpulsory process for enforcing payment of their claims.

■ █ Prior to the enactment of article 5472a, one furnishing labor or material for the construction of public improvements could neither fix a lien on the improvements nor impound the funds due by the state or municipality for such improvements. The only remedy afforded such laborer or materialman was that given by Revised Statutes, article 5160, by which it was provided that those contracting to construct such improvements should, before commencing such work, execute a bond obligating such contractor to pay all persons supplying labor or material for such improvements. At the time article 5472a was enacted, the state was entering upon a period of extensive road building and public improvements. It is manifest that by the enactment of article 5472a, it was the intention of the Legislature to provide additional security to those who furnish labor or material for public improvements. The Legislature was attempting to provide a method by which the funds set aside for such improvements could be impounded for the benefit of those who directly brought about such improvements. The state was furnishing the funds for such improvements, and it had the right and it was its duty to provide that those who supplied the labor and material for such improvements should be compensated therefor. It is the duty of the courts, therefore, to so construe the statute as to accomplish this end, if they can do so, without doing violence to the language used.

To give the statute that construction contended for by appellee and to hold that those who furnish labor and material to the general contractor may impound the funds, but that those who furnish such labor or material to a subcontractor have no lien thereon, would be a discrimination without warrant. We can perceive no good reason why the Legislature should prefer the laborer who furnishes labor direct to the general contractor over the one who furnishes such labor to a subcontractor. In each case the general contractor gets the benefit of the labor and material necessary for the improvements and for which he has obligated himself to pay. The state likewise gets the benefit of such labor and material and is likewise interested in seeing that it is paid for. Moreover, to place such a construction on the statute would enable the general contractor to practically nullify the statute. By subletting the entire contract, the general contractor could place the funds beyond the reach of the laborer and materialman. The general contractor, under his contract with the state, obligated himself to pay all lawful claims for labor and material furnished for such improvements. It was made the duty of the contractor to

supply the labor and material for such improvements at his own cost. He could provide such labor and material himself, or he could delegate or sublet this duty to another, but, by such subletting, the general contractor could not relieve the funds due him under such contract from the danger of being impounded for the payment of the obligations that he had assumed. If the general contractor desired to protect himself against bills incurred by the subcontractor, he should have demanded a bond from the subcontractor. Huddleston & Work v. Kennedy, 40 S.W.(2d) ——, decided by the Eastland Court, Feby. 20.[1]

Prior to the enactment of article 5472a, the Legislature in 1913 had enacted Revised Statutes, article 5160, requiring the general contractor who contracts to construct public improvements to execute a bond to secure the payment of bills incurred for labor and material. That article provides that "any person * * * entering into a * * * contract with this State * * * for the construction of any public * * * work, shall be required * * * to execute the usual penal bond * * * that such contractor shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract." It will be noted that this statute relates to the same subject as does article 5472a, that is, the protection of the laborer and materialman on public improvements, and that it does not by its terms require that the bond shall be made for the benefit of those furnishing labor or material to a subcontractor. Yet, at the time of its adoption, the courts of the state of Illinois, from which the statute was apparently adopted, had held that such bond inured to the benefit of those furnishing such labor or material to a subcontractor. Siemer Milling Co. v. C. J. Moritz, Inc., 227 Ill. App. 459; City of Staunton v. Cole & Fauber, 254 Ill. App. 377. It is a well-established doctrine that when the statute of another state is adopted with a known and well defined construction, the courts may presume that the legislators used the words therein with the intent that they should receive the same construction. City of Tyler v. St. L. S. W. Ry. Co., 99 Tex. 491, 91 S. W. 1, 13 Ann. Cas. 911. This article 5160 is almost an exact copy of the federal statute on the same subject (USCA, title 40, § 270) enacted in 1894. The Supreme Court of the United States in numerous decisions has held that the bond provided for therein inured to the benefit of those furnishing material or labor to the subcontractor. United States, for Use of Hill, v. American Surety Co., 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 440; Mankin v. United States, 215 U. S. 533, 30 S. Ct. 174, 54 L. Ed. 315.

Consequently our own courts, in construing article 5160, have held that such bond protected those furnishing material or labor to subcontractors. Fennell v. Trinity Portland Cement Co. (Tex. Civ. App.) 209 S. W. 796, para. 6, (writ refused); U. S. F. & G. Co. v. Henderson County (Tex. Civ. App.) 253 S. W. 835; Fleming-Stitzer Co. v. Boyett (Tex. Civ. App.) 253 S. W. 561, at page 565. Such construction of the meaning of the terms of article 5160 was well established in this state at the time the Legislature enacted article 5472a, now under consideration. Since at the time of the enactment of article 5472a the courts of this and other states had held that the terms of article 5160 were broad enough to include all those whose labor or material was used in such improvements, and that one supplying material or labor to a subcontractor was protected alike under the statute with one furnishing labor or material to the general contractor, and since article 5472a was on the same subject, we assume that the Legislature intended to adopt the same construction that had been placed on the previous statute and that the latter statute inures to the benefit of those so supplying subcontractors. Huddleston & Work v. Kennedy, 40 S.W.(2d) ——, supra.[1]

Was it necessary that the notice be given to the proper authorities before the first payment was made under the contract? The statute provides that "such person [so furnishing the labor or material] * * * shall, before any payment is made to such contractor, notify in writing the officials of the State," etc. The record shows that more than $100,000 had been paid by the state to the general contractor before the notice was given. There yet remained unpaid on the contract the sum of $23,414.58 at the time the notice was given. It is the contention of the appellee that the required notice must be given before the first payment is made by the state to the contractor. The word "any" is a flexible word that may have any one of several meanings according to its use. In its broad, distributive sense, the sense in which the word is very frequently used, it may have the meaning of "all," "every," "each," or "each one of all." 3 C. J. 232. Its meaning is often restrained, limited, or influenced by the subject-matter or manner in which it is used. It may mean "one indefinitely out of an indefinite number." Words and Phrases, Third Series, Vol. 1, page 477. When used in a statute, it should be so construed as to make its meaning comport with the general scheme of the statute in which it is used. Articles 5472a and 5472b were passed by the Legislature for the purpose of providing a more expedient and efficient method to those furnishing material, apparatus, fixtures, machinery, or labor

---

[1] Rehearing pending.

to any contractors for any public improvements in this state for the collection of their claims therefor. The remedy provided by these statutes is in addition to the remedy provided by article 5160, which was in force at the time of their passage. It is manifest that it was the intention of the Legislature by the enactment of article 5472a to give to the laborer and materialman who furnished labor and material for the construction of public improvements a lien on the funds set apart by the state for such work. Under the statutes, contracts for the construction of state highways may provide for payment in installments to an amount not exceeding 90 per cent. of the value of the work done. Ten per cent. of the contract price is retained until the entire work has been completed and accepted, and it is provided that the final payment shall not be made until it is shown that all sums of money due for labor and material or equipment furnished for the purpose of such improvements have been paid. Vernon's Ann. Civ. St. art. 6674m. If we give the statute the construction contended for by appellee, those furnishing labor and material, and giving the required notice before the first installment is paid under the contract, would have a lien on the funds, whereas, those furnishing labor and material thereafter would have no such lien. We can perceive no reason why the Legislature should prefer those who furnished the first labor and material under the contract over those who completed the work. The labor and material for the placing of the topping on the road is of equal importance as the labor and material necessary for the construction of the foundation. The Legislature, by the enactment in question, was undertaking to empower the state highway department to contract for the necessary labor and material for the completion of the entire contract, and was likewise undertaking to secure those who furnished such labor and material. If we accede to appellee's contention, the contractor, by collecting the first installment on the contract, could thereby nullify the statute and automatically place the remainder of the funds beyond the reach of the laborer who thereafter labored under such contract. We think that the notice is sufficient if it is given before the last, or any other installment, is paid. So long as there yet remains in the hands of the state or municipality a payment that has not been made to the contractor, the same may be impounded and subjected to the claim of the laborer or materialman by the giving of the notice to the proper authority. Huddleston & Work v. Kennedy, supra.

Is notice to the state highway department or state highway commission, sufficient? The statute provides that those furnishing the labor or material shall "notify in writing the officials of the State * * * whose duty it is to pay such contractor of his claim." The trial court held that the notice should have been given to the state treasurer and not to the highway commission. Under the statute, all funds belonging to the highway department are "deposited with the State Treasurer to the credit of a special fund designated as 'The State Highway Fund,' and shall be paid only on warrants issued by the Comptroller upon vouchers drawn by the chairman of the Commission and approved by one other member thereof, such vouchers to be accompanied by itemized sworn statements of the expeditures." R. S. art. 6694. By article 6672 of the statutes, it is provided that such funds shall be expended by and under the supervision of the state highway department. See, also, R. S. arts. 6673, 6674; Vernon's Ann. Civ. St. arts. 6674c, 6674d, and 6674e. It is apparent from the provisions of these statutes that the state highway department is given the control and supervision of the state highway funds and that it has the authority to say when the funds shall be expended and when they shall not be expended. The state treasurer is merely the depository of the funds. The highway department is authorized to enter into the contract on the part of the state for the construction of state highways and to make a binding contract for the payment of the contract price thereof. Vernon's Ann. Civ. St. art. 6674l. The highway commissioners must authorize the payment of the estimates due under the contract and no installment can be paid until it is so authorized by the highway commissioners. We think the state highway department and the commissioners thereof are the officers whose duty it is to pay such claims, and that notice to that department is sufficient to impound the funds.

The appellant, in addition to suing Paul Schriewer and the appellees for the amount hereinabove referred to, sued the appellees for an additional sum of $26.50 claimed to have been furnished directly to Allen Smith. It does not appear that notice of the claim for this item was given to the highway department, and therefore the appellant was not entitled to recover for this item. Since appellant was not entitled to recover the full amount sued for, it is not entitled to recover the attorney's fees provided for in article 5472b—1. The appellant seemed to recognize this proposition, as it introduced no evidence as to the reasonable value of attorney's fees.

It is apparent from what has been said that the appellant was entitled to recover from the appellees the amount of its claim against Paul Schriewer. The judgment of the trial court in favor of the appellant against Paul Schriewer is therefore affirmed,

and the judgment of the trial court in favor of the appellees is reversed, and judgment is here rendered in favor of the appellant against the appellees for the sum of $12,941.-81, with interest thereon at the rate of 6 per cent. per annum from January 1, 1930.

### On Motion for Rehearing.

In our original opinion, we held that the appellant was not entitled to recover the full amount sued for and that by reason thereof it was not entitled to recover the reasonable attorney's fee provided for in article 5472b—1, § 2 (Acts 1929, 41st Leg., 2d C. S., p. 154, c. 78). In this we were in error. An inspection of the record reveals that the appellant was allowed to recover in this court the full amount for which claim was made to the state highway department and it was therefore entitled to recover a reasonable attorney's fee to be taxed as a part of the costs in the case.

In the trial court, the appellant did not introduce any evidence showing what would be a reasonable attorney's fee for the claimant, and the question arises: Can this court fix the amount of such fee without such evidence? In the case of Mayer v. Templeton, 53 S. W. 68, 70 (writ refused), the Court of Civil Appeals had under consideration Revised Statutes 1925, article 4100, allowing a reasonable attorney's fee to a garnishee. No fee was allowed in the trial court and no evidence introduced showing what would be a reasonable fee. The court said: "It is held that the court may fix such compensation without evidence, and we here make the order that appellees be allowed $100 as such compensation, to be paid by appellants." The Supreme Court denied a writ of error in that case. In the case of Johnson v. Blanks, 68 Tex. 495, 4 S. W. 557, 558, the court in construing the same statute held that the trial court could, without evidence, fix the amount of the fee to be allowed the attorney for the garnishee. In that case the court said: " * * * It would certainly be competent for the court to demand evidence if it saw proper, and in some cases this might be necessary. But it is to be presumed that the court is sufficiently acquainted with the value of professional services in preparing a garnishee's answer which is presented to it without hearing testimony." The same holding was made in the case of Kansas City, M. & O. Ry. Co. v. Oates (Tex. Civ. App.) 185 S. W. 1014; Bohan v. Harris, 71 Mont. 495, 230 P. 586; Carr v. Bonthius, 79 Wash. 282, 140 P. 339; Spencer v. Collins, 156 Cal. 298, 104 P. 320, 20 Ann. Cas. 49; Pearce v. Albright, 12 N. M. 202, 76 P. 286; Globe Indemnity Co. v. Sulpho-Saline Bath Co. (C. C. A.) 299 F. 219; Mills v. Lehigh Valley Ry. Co. (D. C.) 226 F. 812.

In American Can Co. v. Ladoga Canning Co. (C. C. A.) 44 F.(2d) 763, pages 765–772, it was held that where the trial court allowed an attorney's fee and the case was afterwards appealed, the appellate court could allow an additional fee to cover the services rendered on appeal. The same holding was made in Davis v. Parrington (C. C. A.) 281 F. 10, and Louisville & N. Ry. Co. v. Dickerson (C. C. A.) 191 F. 705.

Any testimony that might have been introduced on the trial as to what would have been a reasonable attorney's fee would have been in the nature of expert testimony, and, as such, would have been merely advisory and would not have been binding on the court. The witnesses in estimating the value of such services could not have taken into consideration the services afterwards rendered on appeal. The fee asked for in this case is only $500. The judgment is for approximately $13,000. This court is familiar with the record, and we find that the fee asked for is not excessive, but is a reasonable fee within the contemplation of the statute. The judgment heretofore rendered herein is modified so as to allow the appellant an attorney's fee of $500 to be taxed as a part of the costs.

In all other respects, the motions for rehearing filed herein by both the appellant and the appellees are overruled.